**Affirmed and Memorandum Opinion filed October 25, 2016.**



In The

# Fourteenth Court of Appeals

## NO. 14-15-00473-CR

### LAJUAN KENDELL WARD, Appellant

### V.

### THE STATE OF TEXAS, Appellee

**On Appeal from the 232nd District Court
Harris County, Texas
Trial Court Cause No. 1423997**

## M E M O R A N D U M   O P I N I O N

Appellant Lajuan Kendell Ward was convicted of aggravated robbery and sentenced to 15 years in prison. *See* Tex. Penal Code Ann. § 29.03 (West 2011). Appellant now appeals his conviction. Among other issues, appellant contends the trial court erred when it included a separate, unindicted offense of criminal conspiracy in the jury charge. We overrule this issue because the charge did not include the offense of criminal conspiracy, but instead contained an instruction on

the law of parties, which need not be included in the indictment.

Most of appellant's issues challenge the admission of evidence. Appellant contends that the trial court erred when it admitted evidence of an extraneous bad act during the punishment phase of his trial because the State failed to provide notice of its intent to do so. We overrule this issue because the record on appeal demonstrates that notice was given. Appellant also asserts that the trial court abused its discretion when it denied his motion to suppress his recorded statement, which was involuntary as a result of police overreaching through a promise of leniency. We overrule this issue because our review of appellant's statement does not reveal a positive promise of lenient treatment by the police investigator.

Next, appellant contends that the trial court abused its discretion when it admitted expert testimony on the location of appellant's cell phone around the time of the robbery because the State's expert's opinion was unreliable. We hold the trial court did not abuse its discretion because the expert adequately demonstrated his qualifications and explained the methodology used to opine on the location of appellant's cell phone during the robbery. Appellant also argues that the trial court abused its discretion when it denied his motion to suppress his cell phone records because the affidavit supporting the search warrant did not establish probable cause. We overrule this issue because the circumstances reflected in the affidavit as a whole established probable cause. Finally, appellant argues that the trial court erred when it denied his motion to suppress the search warrant because the State did not produce the warrant and supporting affidavit to the trial court. Because the record establishes that the trial court had the opportunity to review the challenged search warrant and affidavit, we overrule this issue. We therefore affirm the trial court's final judgment.

## BACKGROUND

Solomon Deegefa was working as a clerk at Pak's Tiger Express on West Alabama Street when a young man, later determined to be appellant, approached Deegefa to ask him the price of different candies. Appellant moved away from the register after asking about the candy prices but remained in the store. Appellant was talking on his cell phone throughout this interaction. Two men, Robert Carter and Ernest Neil, were also inside the store. Both men were playing black jack machines. About five to ten minutes later, another man, later determined to be Reginald Sweed, came into the store with his face covered and wearing medical-type gloves. Sweed pointed a gun at Deegefa, forced him to the register, and told him to open it. Sweed took the money from the register as well as Deegefa's cell phone and the money from his pockets. Sweed then made Deegefa lie down on the floor, where he kicked Degeefa in the back. While this was happening at the register, appellant dealt with the two black jack players. Carter immediately laid down on the floor in response to appellant's order. Appellant grabbed Neil from behind and punched him in the back of the head multiple times, forcing him to the floor. Appellant told both men not to get up or look at them. Appellant took Neil's wallet and cell phone. He also took money out of Carter's pocket. The two robbers then left the store.

Neil got into his truck and tried to follow Sweed but was unable to do so. Neil began searching the area around the store and saw Sweed standing on the side of a street close to the robbery scene. Neil asked a passerby to use his phone to call 9-1-1. Neil then saw Sweed run off into a yard.

James Neilsen lived about two blocks from the Pak's Tiger Express near where Neil had seen Sweed standing on the street. Neilsen heard his dog barking and when he looked outside, he saw a man perched on his fence. Neilsen saw the

man get in an older Toyota Camry that already had another person slumped down in the passenger-side seat. The man had trouble starting the car and Neilsen wrote down the license plate number as well as the make and model of the car. Neilsen turned the license plate information over to the police that same day. A few days later, Neilsen found latex gloves and a gun in his yard, which he also turned over to the police.

Detective Paul Reese investigated the robbery. Using the license plate number provided by Neilsen, Reese learned the Camry was registered to Sweed's wife, Shirley Sweed. Reese talked to Mrs. Sweed, who told him that her husband drives the Camry. She also gave Reese Sweed's cell phone number. Reese then obtained Sweed's cell phone records. In analyzing those records, Reese identified another suspect phone number due to the timing and location of calls made to it from Sweed's number. Reese obtained phone records for the second number through a search warrant and discovered that the number belonged to appellant.

Reese called appellant and conducted a non-custodial telephone interview. Although appellant initially denied involvement in the robbery, he eventually admitted participating in the robbery with Sweed, his uncle. According to appellant, Sweed told him he needed to make some money and that he would pay appellant for his help. Appellant told Reese that his job was to beat up anyone in the store who tried to resist during the robbery. Appellant also told Reese that he was talking to Sweed on his cell phone while he was inside the store before the robbery. Appellant denied knowing prior to the robbery that Sweed had a gun. Appellant told Reese that he first learned Sweed had a gun when Sweed entered the store holding the gun in his hand. Appellant continued participating in the robbery after that point, however, and he also fled the scene with Sweed when the robbery was over. Appellant was arrested after this conversation.

4

Reese turned the phone records he had obtained through the search warrants over to Officer Eric Powell of the Houston Police Department's communications intelligence unit. Powell testified that the cell phone records for appellant's and Sweed's cell phones reveal the calls made and received by each phone number, the time of each call, and the identification number of the exact cell phone tower that was used for each call. The cell phone company also provided Powell with access to a list of the company's towers and their locations in the Houston area. Powell testified that by using the historic phone records for the two suspect phones and the cell company's list of towers, he was able to map the approximate location of each cell phone around the time of the robbery. Powell did this by locating the cell phone tower actually used for the calls made around that time. Powell opined that the two cell phones were making and receiving phone calls from the vicinity of Pak's Tiger Express around 1:00 p.m., the approximate time of the robbery. Powell came to this conclusion despite knowing that a cell phone does not necessarily connect with the closest antenna but instead connects with the strongest signal.

At the conclusion of the evidence, the jury found appellant guilty of aggravated robbery and sentenced him to fifteen years in prison. This appeal followed.

ANALYSIS

Appellant raises seven issues challenging his conviction. We address each in turn.

## I. The jury charge did not include an unindicted conspiracy offense.

The jury charge included an instruction explaining criminal responsibility for the anticipated result of a conspiracy to commit a felony. The charge then provided a definition of "conspiracy," which tracked the definition in the Penal

5

Code. *See* Tex. Penal Code Ann. § 15.02 (West 2011) (defining criminal conspiracy). Based on this language, appellant argues in his first issue that the trial court committed egregious error because it instructed the jury that, as an alternative means of conviction, it could find appellant guilty of a criminal conspiracy offense not authorized by the indictment.

An appellate court's first duty in analyzing a jury charge issue is to decide whether error exists. *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005). If the reviewing court finds error, it then analyzes that error for harm. *Id.* Thus, we must first determine whether error exists in the charge. *Id.*

Despite appellant's argument to the contrary, the jury was not instructed on the separate offense of criminal conspiracy. Instead, the jury was instructed on the law of parties as one possible means by which it could convict appellant of aggravated robbery, the charge included in the indictment. A person may be guilty as a party to aggravated robbery if the defendant committed the offense by his own conduct or by the conduct of another for which he is criminally responsible. Tex. Penal Code Ann. § 7.01(a) (West 2011). "A person is criminally responsible for an offense committed by the conduct of another if: . . . acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense." Tex. Penal Code Ann. § 7.02(a)(2) (West 2011). "If, in the attempt to carry out a conspiracy to commit one felony, another felony is committed by one of the conspirators, all conspirators are guilty of the felony actually committed, though having no intent to commit it, if the offense was committed in furtherance of the unlawful purpose and was one that should have been anticipated as a result of the carrying out of the conspiracy." Tex. Penal Code Ann. § 7.02(b) (West 2011).

Consistent with section 7.02(b), the law-of-parties instruction in this case

included an explanation of criminal responsibility for the anticipated result of a conspiracy to commit a felony. The charge also included a definition of "conspiracy" that tracked the language of section 15.02 of the Penal Code. The trial court committed no error by including these matters in the charge. *See Montoya v. State*, 810 S.W.2d 160, 165 (Tex. Crim. App. 1989) (rejecting murder defendant's complaint that parties charge under section 7.02(b) accompanied by definition of conspiracy using language found in section 15.02 added unindicted offense of criminal conspiracy to the charge).

Neither the Penal Code nor due-process principles of fair notice require an indictment to include the law of parties. *Marable v. State*, 85 S.W.3d 287, 287 (Tex. Crim. App. 2002); *see* Tex. Penal Code Ann. § 7.01(c) (West 2011) ("[E]ach party to an offense may be charged and convicted without alleging that he acted as a principal or accomplice"). The law of parties may instead be included in the jury instructions if the evidence supports the submission of the instruction as a possible means by which the crime was committed. *Williams v. State*, 473 S.W.3d 319, 329 (Tex. App.—Houston [14th Dist.] 2014, pet. ref'd). Appellant contends in his reply brief that such a submission was not supported by the evidence, but he neither raised an issue nor provided argument regarding this contention in his brief of appellant and thus failed to preserve it for our review. *Cf.* Tex. R. App. P. 38.1(f), (i). Appellant's contention would fail in any event because the evidence recounted in the background section above supports the inclusion of the law of parties in the charge. There was ample evidence that appellant and Sweed agreed to commit robbery and that, in the course of carrying out that conspiracy, Sweed committed aggravated robbery by using or exhibiting a deadly weapon.

For these reasons, the trial court did not err when it included an instruction

on conspiracy to commit aggravated robbery in the jury charge.[1] We overrule appellant's first issue.

## II. Appellant did not preserve his second issue for appellate review.

Appellant was charged with aggravated robbery. During the charge conference, the trial court indicated it was including the law of parties as a means by which the jury could convict appellant of aggravated robbery. Appellant contends on appeal that he asked the trial court to include an instruction on "conspiracy to commit robbery" as a lesser-included offense. Appellant argues in his second issue that the trial court erred when it did not include this instruction in the jury charge. The State responds that appellant failed to preserve this issue for appellate review. We agree with the State.

The trial judge has a duty to prepare a jury charge that accurately sets out the law applicable to the specific offense charged. Tex. Code Crim. Proc. Ann. art. 36.14 (West 2007); *Delgado v. State,* 235 S.W.3d 244, 249 (Tex. Crim. App. 2007). The trial judge has the duty to instruct the jury on the law applicable to the case even if defense counsel fails to object to inclusions or exclusions in the charge. *Taylor v. State,* 332 S.W.3d 483, 486 (Tex. Crim. App. 2011). A jury instruction on a lesser-included offense, however, is not the law applicable to the case absent a request by the defense for its inclusion in the jury charge. *See Tolbert v. State,* 306 S.W.3d 776, 781 (Tex. Crim. App. 2010). The judge does not

---

[1] Appellant also argues that the trial court erred when it instructed the jury on conspiracy under the law of parties because it deprived him of a unanimous verdict. We conclude that unanimity was not required with respect to the law of parties. *See Leza v. State*, 351 S.W.3d 344, 357 (Tex. Crim. App. 2011) ("[S]everal courts of appeals in Texas have concluded that the Legislature did not intend that a jury should have to achieve unanimity with respect to whether an accused was guilty of capital murder as a principal actor or as a party, or with respect to any particular statutory alternative by which he might be found liable as a party. We agree, and hold there was no error in the jury charge."). Because we conclude that the trial court did not err, we do not consider harm. *Ngo*, 175 S.W.3d at 743.

8

have a duty to instruct the jury sua sponte on lesser-included offenses. *Id.* Therefore, a defendant cannot complain on appeal about the trial judge's failure to include a lesser-included-offense instruction unless he requested it or objected to its absence. *Vega v. State,* 394 S.W.3d 514, 519 (Tex. Crim. App. 2013).

A trial judge is not required "to mull over all the evidence introduced at trial in order to determine whether a defendant's request for a jury instruction means more than it says." *Bennett v. State*, 235 S.W.3d 241, 243 (Tex. Crim. App. 2007). To preserve error, a request to instruct the jury on a lesser-included offense must be specific and clear enough to apprise the trial court of the alleged deficiency. *See Pennington v. State*, 697 S.W.2d 387, 390 (Tex. Crim. App. 1985). Finally, if an appellant's argument on appeal regarding a lesser-included offense does not comport with his objection or request at trial, his complaint is not preserved for appellate review. *See Penry v. State,* 903 S.W.2d 715, 753 (Tex. Crim. App. 1995); *Pennington*, 697 S.W.2d at 390; *Johnson v. State*, 416 S.W.3d 602, 614–15 (Tex. App.—Houston [14th Dist.] 2013, no pet.).

During the charge conference, the following exchange occurred:

[Defense Attorney 1]: The two application paragraphs the second one which deals with conspiracy we would request a lesser included instruction that if they find that he was guilty of conspiring to commit the misdemeanor [sic] offense of robbery that he would not be guilty of aggravated robbery.

The evidentiary basis for that would be his phone conversation was admitted into evidence. At some point in there he says something about we're going over to rough these people up or something like that. I don't think that he said beat them up but going over there to assault them because uncle said they ripped him off got some of his money. And under the law as I understand it under conspiracy

9

he can't be guilty of aggravated robbery unless they were conspiring to commit a felony of robbery.

The Court: Right. But that's encompassed in the charge. You want me to add kind of an inverse charge?

[Defense Attorney 1]: A lesser included. "If you find that he was guilty of the conspiracy to assault that he would not be guilty of aggravated robbery."

The trial court denied appellant's request. The State then presented one last witness and then both sides rested. At this point, the following exchange occurred:

[Defense Attorney 2]: Just to clarify for the record no other objections other than what we talked about in previous conference, the request for the lesser included.

The Court: What was your lesser?

[Defense Attorney 2]: I believe [Defense Attorney 1] asked for lesser included of assault which was denied. I just wanted to clarify we had no further objections.

The Court: You were asking for lesser included of assault?

[Defense Attorney 1]: Under the conspiracy application paragraph.

The Court: Oh, you wanted a lesser of assault.

[Defense Attorney 1]: Yes and you overruled it. We just wanted to make sure the record - -

The Court: I didn't understand that's what you were asking for. I thought you meant you wanted me to say something about the conspiracy charge that they couldn't find him guilty of aggravated robbery if they thought the original conspiracy was for assault.

[Defense Attorney 1]: Yes, that's correct. That's what we were requesting that charge, that if he was conspiring

10

| | only to commit an assault, if that's what the jury finds they could not find him guilty of aggravated robbery 'cause that would be a conspiracy to commit a misdemeanor not a felony. |
|---|---|
| The Court: | Okay. And I think that that's covered in the way that the charge is already written but you're also asking for a lesser of assault to be submitted to the jury? |
| [Defense Attorney 1]: | Yes. The assault by threat. |
| The Court: | Okay. Yes that's denied. |

Appellant argues in his second issue on appeal that the trial court erred when it denied his request for the jury charge to include "the lesser included offense of conspiracy to commit robbery." This contention does not match the request made in the trial court. Therefore, appellant did not preserve this argument for appellate review. *See Penry,* 903 S.W.2d at 753; *Pennington*, 697 S.W.2d at 390; *Johnson*, 416 S.W.3d at 614–15. We overrule appellant's second issue.

**III.  The trial court did not abuse its discretion in admitting extraneous-offense evidence during the punishment phase of trial because the State provided notice of its intent to introduce such evidence.**

During the punishment phase of appellant's trial, the State sought to introduce evidence of the details underlying appellant's juvenile conviction for kidnapping. The State had notified appellant that it "may use the following extraneous offenses and/or prior convictions . . . as such become admissible: (1) On January 27, 2010, in cause number 200901824J, Defendant was placed on juvenile probation for . . . kidnapping in the 313the [sic] District Court of Harris County, Texas." The State also provided appellant with a copy of the juvenile probation records and filed them with the trial court. Appellant stipulated to the conviction.

11

When appellant learned that the State intended to introduce evidence of the details involved in the kidnapping episode, he objected that the State had not provided notice of this intent to go behind the fact of the conviction as required by article 37.07(g) of the Texas Code of Criminal Procedure. The State responded that it provided the required notice and that it was authorized to introduce evidence regarding the details of the prior conviction. The trial court overruled appellant's objection and admitted the extraneous-offense evidence. In his third issue, appellant contends the trial court abused its discretion when it overruled his objection and allowed the admission of evidence regarding the details of the kidnapping.

During the punishment phase of a trial, article 37.07 permits the introduction of evidence of extraneous offenses committed by a defendant to the extent the court deems the evidence relevant to sentencing. Tex. Code Crim. Proc. Ann. art. 37.07 § 3(a) (West 2006). If the defendant requests notice of the State's intent to use an extraneous offense during the punishment phase, then the State must provide it in the same manner required by Rule 404(b) of the Texas Rules of Evidence. *Id.* § 3(g). The trial court is the authority on the threshold issue of admissibility of relevant evidence during the punishment phase. *Mitchell v. State*, 931 S.W.2d 950, 953 (Tex. Crim. App. 1996). We review a trial court's ruling on the admissibility of extraneous-offense evidence for an abuse of discretion. *Brooks v. State*, 76 S.W.3d 426, 435 (Tex. App.—Houston [14th Dist.] 2002, no pet.).

Appellant does not dispute that he received notice of the State's intent to use his kidnapping conviction. This is the only notice the statute requires when a prior bad act has resulted in a conviction. *See* Tex. Crim. Proc. Code Ann. art. 37.07 § 3(g) (requiring State to provide detailed information regarding extraneous offense only when it did not result in final conviction or probated or suspended

12

sentence); *cf. Brooks*, 76 S.W.3d at 435 (stating in dicta that no notice is required if court only considers evidence of extraneous offense that resulted in a final conviction). Once notice was given, the State was permitted to introduce evidence regarding the facts underlying appellant's prior conviction during the punishment phase of the trial. *Hambrick v. State*, 11 S.W.3d 241, 243 (Tex. App.—Texarkana 1999, no pet.) (citing *Davis v. State*, 968 S.W.2d 368, 373 (Tex. Crim. App. 1998)). Because appellant has not shown that the trial court abused its discretion when it overruled his objection and admitted the evidence detailing appellant's kidnapping conviction, we overrule his third issue.

**IV.** **The trial court did not abuse its discretion when it denied appellant's motion to suppress his statement because it was not procured through a promise of leniency.**

Appellant contends in his fourth issue that his due process rights were violated when the police obtained his confession during a non-custodial phone interview because the confession was "the product of promises of leniency made by police." The State responds that the trial court did not abuse its discretion when it denied appellant's motion because the police did not make positive promises of lenient treatment during the interview.

### A. Standard of review and applicable law

We review a trial court's ruling on a motion to suppress for an abuse of discretion and overturn the ruling only if it is outside the zone of reasonable disagreement. *Martinez v. State*, 348 S.W.3d 919, 922 (Tex. Crim. App. 2011). We must view the evidence in the light most favorable to the trial court's ruling. *Weide v. State*, 214 S.W.3d 17, 24 (Tex. Crim. App. 2007). At a suppression hearing, the trial judge is the sole trier of fact and assesses the witnesses' credibility and decides the weight to give their testimony. *Id.* at 24–25. When, as

13

here, the trial court makes explicit findings, we determine whether the evidence, when viewed in the light most favorable to the ruling, supports those fact findings. *State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006). We then review the trial court's legal rulings de novo unless its explicit fact findings supported by the record are also dispositive of the legal ruling. *Id.* We uphold the ruling if it is supported by the record and correct under any theory of the law applicable to the case. *Hereford v. State*, 339 S.W.3d 111, 117–18 (Tex. Crim. App. 2011). The burden of proof at the hearing on admissibility is on the State, which must prove by a preponderance of the evidence that the defendant's statement was given voluntarily. *Alvarado v. State*, 912 S.W.2d 199, 211 (Tex. Crim. App. 1995).

A statement is involuntary if the defendant was offered inducements of such a nature or coerced to such a degree that the inducements or coercion produced the statement. *See Alvarado*, 912 S.W.2d at 211. The ultimate test is whether the defendant's will was overborne by the police conduct. *Creager v. State*, 952 S.W.2d 852, 856 (Tex. Crim. App. 1997); *Mason v. State*, 116 S.W.3d 248, 257 (Tex. App.—Houston [14th Dist.] 2003, pet. ref'd). Claims that a confession was obtained involuntarily in violation of due process do not require that the defendant be in custody during the interview. *Wolfe v. State*, 917 S.W.2d 270, 282 (Tex. Crim. App. 1996).

For inducement-based claims of involuntariness, the question is whether the circumstances show that the confession was induced by a promise of a benefit. *Ramirez v. State*, 76 S.W.3d 121, 126–27 (Tex. App.—Houston [14th Dist.] 2002, pet. ref'd). To render a confession involuntary, a promise must have been positive, made or sanctioned by someone in authority, and of such an influential nature that it would cause a defendant to speak untruthfully. *Martinez v. State*, 127 S.W.3d 792, 794 (Tex. Crim. App. 2004); *Sossamon v. State*, 816 S.W.2d 340, 345 (Tex.

14

Crim. App. 1991). General statements regarding how a confession can sometimes result in leniency do not render a confession involuntary. *Muniz v. State*, 851 S.W.2d 238, 254 (Tex. Crim. App. 1993). Nor do general offers to help or expressions of opinion that it would be best for the suspect to tell the truth. *Dykes v. State*, 657 S.W.2d 796, 797 (Tex. Crim. App. 1983). Nor do predictions about future events involving what might happen if the suspect does, or does not, cooperate. *Mason*, 116 S.W.3d at 260; *see Espinosa v. State*, 899 S.W.3d 359, 362–64 (Tex. App.—Houston [14th Dist.] 1995, pet. ref'd) (holding statement not rendered involuntary by officer telling suspect to "tell us what happened. Everything will be better for you. You will get less time.").

### B. The police did not make a positive promise of lenient treatment that induced appellant's confession.

Appellant specifically complains of the following statement by Detective Reese during the call:

> I'm going to give you one last chance to tell me the truth. If not, then the next time you see me it may be under different circumstances, okay? It ain't worth protecting [Sweed]. Last thing I'm going to tell you — it ain't worth it. Now tell me the truth. If you have ever done anything in your life that's smart, tell me the truth. I want to know the truth on this day what happened with you and your uncle and how you got drug into the middle of this . . . . Your mother is a hard working woman; she taught you a lot of good values. She goes to work every day. It ain't worth not being able to see your mother for years. . . . It ain't worth it. You got a girlfriend that's with you now that loves you. You got a lot to live for. This ain't worth going to prison for. Quit lying to me and tell me the truth.

In appellant's view, Detective Reese's statement "could reasonably be interpreted as promises that appellant would not go to jail if he told the truth."[2] The trial court

---

[2] Appellant also complained in the trial court about other statements made by Detective Reese during the telephone interview. These other statements ultimately were not included in

15

disagreed, finding that "Reese did not threaten, coerce or induce [appellant] to talk to him on the phone." The trial court then concluded that appellant's statement was voluntary.

Having considered the statement and the circumstances in which it was given,[3] we conclude that the challenged comments by Detective Reese do not rise to the level of a positive promise that would influence a defendant to speak untruthfully. *See Dykes v. State*, 657 S.W.2d 796, 797 (Tex. Crim. App. 1983) (stating that general offers to help or expressions of opinion that it would be best for suspect to tell the truth do not render statement involuntary); *Coleman v. State*, 440 S.W.3d 218, 224–25 (Tex. App.—Houston [14th Dist.] 2013, no pet.) (concluding that general statements by officer that defendant could help himself by confessing were not positive promises of leniency); *Ramirez*, 76 S.W.3d at 126–27 (concluding detective's discussion about belief juries favor people who tell the truth was statement of opinion not positive promise); *Espinosa*, 899 S.W.2d at 362–64. We hold appellant has not demonstrated that the trial court abused its discretion when it denied his motion to suppress. We overrule appellant's fourth issue.

## V. The trial court did not abuse its discretion in admitting the State's expert testimony on the location of appellant's cell phone around the time of the robbery.

In his fifth issue, appellant argues that because the State's expert, Officer Powell, was unfamiliar with the proprietary software used to determine cell tower to which a phone will connect during a call, he was unqualified and his opinion

---

the portion of the interview that was admitted into evidence and played for the jury.

[3] The statement at issue here was part of a three-way telephone conference call initiated by appellant's mother. Appellant's confession occurred after appellant's mother had discontinued her participation in the call.

16

unreliable. Appellant contends the trial court should therefore have excluded Powell from testifying at trial. The State responds that Powell was qualified to opine on the location of appellant's cell phone during the robbery, and his lack of knowledge regarding proprietary software did not impact the reliability of his opinion that appellant's cell phone was in the approximate area of the Pak's Tiger Express around the time of the robbery.

## A. Standard of review and applicable law

Rule 702 of the Texas Rules of Evidence provides: " A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." Before admitting expert testimony under Rule 702, the trial court must be satisfied that three conditions are met: (1) the witness qualifies as an expert by reason of his knowledge, skill, experience, training, or education; (2) the subject matter of the testimony is appropriate for expert testimony; and (3) admitting the expert testimony will actually assist the fact finder in deciding the case. *Vela v. State*, 209 S.W.3d 128, 131 (Tex. Crim. App. 2006). These conditions are commonly referred to as (1) qualification, (2) reliability, and (3) relevance. *Id.*

Qualification is distinct from reliability and relevance and should be evaluated independently. *Id.* at 131. The proponent of the expert testimony bears the burden of proving the expert is qualified. *Turner v. State*, 252 S.W.3d 571, 584 (Tex. App.—Houston [14th Dist.] 2008, pet. ref'd). The specialized knowledge that qualifies a witness to give an expert opinion may be derived from specialized education, practical experience, a study of technical works, or a varying combination of these things. *Id.* at 585. The witness's specialized knowledge

must be beyond that possessed by the average person, "but the gap need not necessarily be monumental." *Davis v. State*, 313 S.W.3d 317, 350 (Tex. Crim. App. 2010). In addition, the witness's background must be tailored to the specific area of expertise about which he intends to testify. *Vela*, 209 S.W.3d at 133. In other words, to determine whether a witness is qualified to testify as an expert, the trial court must consider whether the witness has a sufficient background in a particular field and whether that background goes to the very matter on which the witness is to give an opinion. *Id.* Because the possible spectrum of education, skill, and training is so wide, a trial court has considerable discretion in determining whether a witness possesses sufficient qualifications to assist the jury as an expert. *Rodgers v. State*, 205 S.W.3d 525, 527–28 (Tex. Crim. App. 2006).

Texas Rule of Evidence 705(c) governs the reliability of expert testimony and states that "[a]n expert's opinion is inadmissible if the underlying facts or data do not provide a sufficient basis for the opinion." Tex. R. Evid. 705(c). The reliability inquiry is flexible, at times focusing on the reliability of scientific knowledge, at other times on the expert's personal knowledge and experience. *Vela*, 209 S.W.3d at 134. Indeed, experience alone may provide a sufficient basis for an expert's testimony. *Id.* The proponent of the expert must establish some foundation for the reliability of the proffered expert's opinion. *Id.*

To be considered reliable, evidence from a scientific theory must satisfy three criteria: "(a) the underlying scientific theory must be valid; (b) the technique applying the theory must be valid; and (c) the technique must have been properly applied on the occasion in question." *Coble v. State*, 330 S.W.3d 253, 273 (Tex. Crim. App. 2010) (quoting *Kelly v. State*, 824 S.W.2d 568, 573 (Tex. Crim. App. 1992)). When "soft" sciences are at issue, the trial court must inquire "(1) whether the field of expertise is a legitimate one, (2) whether the subject matter of the

expert's testimony is within the scope of that field, and (3) whether the expert's testimony properly relies upon and/or utilizes the principles involved in the field." *Id.* (quoting *Nenno v. State*, 970 S.W.2d 549, 561 (Tex. Crim. App. 1998)). "This inquiry is somewhat more flexible than the *Kelly* factors applicable to Newtonian and medical science."[4] *Id.* The general principles announced in *Kelly* apply, but the specific factors outlined in those cases may, or may not apply depending upon the context. *Id.* Regardless, under both *Kelly* and *Nenno*, reliability should be evaluated by reference to the standards applicable to the particular professional field in question. *Id.*

We use the abuse-of-discretion standard to review a trial court's decision on whether to allow expert testimony. *Gallo v. State*, 239 S.W.3d 757, 765 (Tex. Crim. App. 2007). Before reversing the trial court's decision, we must find the trial court's ruling was so clearly wrong as to lie outside the realm within which reasonable people might disagree. *See Taylor v. State*, 268 S.W.3d 571, 579 (Tex. Crim. App. 2008); *Green v. State*, 191 S.W.3d 888, 895 (Tex. App.—Houston [14th Dist.] 2006, pet. ref'd). Absent a clear abuse of discretion, the trial court's decision to admit or exclude expert testimony will not be disturbed. *Wyatt v. State*, 23 S.W.3d 18, 27 (Tex. Crim. App. 2000).

### B. The record supports the trial court's ruling that Officer Powell was qualified to testify and his opinion was reliable.

The State called Officer Powell as an expert to testify on the approximate

---

[4] *Kelly v. State*, 824 S.W2d 568, 573 (Tex. Crim. App. 1992). The factors found in *Kelly* include: (1) the extent to which the underlying scientific theory and technique are accepted as valid by the relevant scientific community, if such a community can be ascertained; (2) the qualifications of the expert testifying; (3) the existence of literature supporting or rejecting the underlying scientific theory and technique; (4) the potential rate of error of the technique; (5) the availability of other experts to test and evaluate the technique; (6) the clarity with which the underlying scientific theory and technique can be explained to the court; and (7) the experience and skill of the person(s) who applied the technique on the occasion in question. *Id.*

location of appellant's cell phone before, during, and after the robbery at Pak's Tiger Express using: (1) historic phone records from appellant's cell phone provider, and (2) a list of the provider's Houston-area cell phone towers and their locations[5] in Houston. The trial court held a hearing outside the presence of the jury to consider appellant's motion to exclude Powell's testimony. At the hearing, Powell testified about his qualifications to opine on these subjects. Powell testified that he had nearly 384 hours of formal training through the Houston Police Department, the FBI, and the U. S. Marshal's office regarding how cell phone networks operate, cell phone company record-keeping practices, how to analyze and use cell phone records, and how to map cell phone towers. Powell further testified that he had worked in the Houston Police Department's Criminal Intelligence Division for six years performing these types of tasks on a daily basis. Powell testified that appellant's cell phone records report the exact tower a cell phone connected to for each call made or received. Powell also testified that he was aware that a cell phone connects to the tower with the strongest signal, not just the closest tower. Powell admitted that he was not familiar with the proprietary software the phones use to determine which tower has the strongest signal. Powell was familiar with the geographic sector each tower served, however.

We conclude that knowledge regarding the cell phone's proprietary software was not relevant to the relatively simple task Officer Powell was called upon to perform: map the location of appellant's cell phone by using the towers identified in appellant's cell phone records and the locations of the cell phone provider's towers. *See Thompson v. State*, 425 S.W.3d 480, 489 (Tex. App.—Houston [1st Dist.] 2012, pet. ref'd) ("The complexity of the technique employed in this case to interpret the records is not great—[the witness] only needed to know how the

_____

[5] The cell phone provider gives police online access to their tower list, which provides each tower's location using its latitude and longitude.

20

records were produced and what the data in each column signified."); *Robinson v. State*, 368 S.W.3d 588, 601 (Tex. App.—Austin 2012, pet. ref'd) ("The analysis is straightforward and not particularly complex."). Officer Powell's training and experience were on the exact subject about which he was asked to testify during appellant's trial. We conclude the trial court did not abuse its discretion when it determined Officer Powell was qualified to testify as an expert. *See Thompson*, 425 S.W.3d at 489 (concluding trial court did not abuse its discretion when it determined that officer with less training than Powell was qualified as an expert to render opinion on location of defendant's cell phone); *Robinson*, 368 S.W.3d at 600–01 (concluding police witness with training similar to Officer Powell's was qualified to render opinion on general location of defendant's cell phone).

Appellant also argues that the trial court abused its discretion in admitting Officer Powell's testimony because his opinion was unreliable. Appellant argues it was unreliable for three reasons: (1) Powell was unfamiliar with the proprietary software the phones use to connect with a tower, (2) he was unaware of the variables present around Pak's Tiger Express that theoretically could affect which tower a cell phone would connect to at a given time, and (3) he incorrectly testified that cell phones connect to the closest tower. The first two complaints do not impact the reliability of Officer Powell's opinion because the historic cell phone records reveal the exact tower appellant's cell phone connected to before, during, and after the robbery, thereby removing any doubt about the potential impact of environmental or other factors impacting which tower was used. *See Thompson*, 425 S.W.3d at 488–89 (rejecting challenge to expert opinion based on argument it was possible defendant's cell phone was located miles away from tower shown in records). Appellant's third complaint misstates Officer Powell's testimony. Officer Powell never testified that a cell phone always communicates with the

closest tower. Powell instead testified that a cell phone connects to the tower with the strongest signal, which may or may not be the tower closest to the cell phone but generally will be within a half-mile to one mile from the phone in a congested urban area. He also testified that about 90 percent of the time, he can locate a person by identifying the towers to which his cell phone connects when calls are made or received. Because Officer Powell was aware of (1) the basic functioning of cell phones and how they connect with cell phone towers, and (2) the areas served by each cell phone tower, we conclude the trial court did not abuse its discretion when it determined that his opinion on the general location of appellant's cell phone around the time of the Pak's Tiger Express robbery was reliable. *See id.* We overrule appellant's fifth issue.

**VI.  The trial court did not err when it denied appellant's motion to suppress his cell phone records.**

Appellant argues in his sixth issue that the trial court erred when it denied his motion to suppress his cell phone records because Detective Reese's affidavit used in the application for the search warrant failed to establish probable cause. The State responds the trial court committed no error because the affidavit established probable cause.

**A.  Standard of review and applicable law**

As discussed above, we ordinarily review a trial court's ruling on a motion to suppress evidence for an abuse of discretion. *Martinez*, 348 S.W.3d at 922. We give almost total deference to the trial court's determination of historical facts that depend on credibility and review de novo the trial court's application of the law to those facts. *State v. Dugas*, 296 S.W.3d 112, 115 (Tex. App.—Houston [14th Dist.] 2009, pet. ref'd). We also review de novo the trial court's application of the law of search and seizure. *Id.* When reviewing a magistrate's decision to issue a

22

warrant, however, trial and appellate courts apply a highly deferential standard in keeping with the constitutional preference for a warrant. *Rodriguez v. State*, 232 S.W.3d 55, 61 (Tex. Crim. App. 2007).

The Code of Criminal Procedure allows the issuance of a search warrant to seize property or items that constitute evidence of an offense. *Dugas*, 296 S.W.3d at 115 (citing Tex. Code Crim. Proc. Ann. art. 18.02(10) (West 2005) and *Muniz v. State*, 264 S.W.3d 392, 396 (Tex. App.—Houston [1st Dist.] 2008, no pet.)). Before a search warrant may be issued, a sworn affidavit must be filed setting forth sufficient facts to show probable cause that (1) a specific offense has been committed; (2) the specifically described property or items to be searched for or seized constitute evidence of that offense or evidence that a particular person committed that offense; and (3) the property or items constituting such evidence are located at or on the particular person, place, or thing to be searched. *Id.* (citing Tex. Code Crim. Proc. Ann. art. 18.01(c) (West 2015)).

Probable cause to support the issuance of a search warrant exists when a magistrate has a substantial basis for concluding that a search would uncover evidence of wrongdoing. *Id.* When making this determination, the magistrate is not bound by such standards as proof beyond a reasonable doubt or by a preponderance of the evidence; rather, the magistrate's sole concern should be probability. *Rodriguez*, 232 S.W.3d at 60. The test is whether a reasonable reading of the affidavit by the magistrate would lead to the conclusion that the affidavit provided a substantial basis for the issuance of the search warrant. *Id.*

When reviewing an issuing magistrate's probable-cause determination, an appellate court should interpret the affidavit in a common-sense and realistic manner, recognizing that the magistrate may draw reasonable inferences. *Id.* at 61. When in doubt, a reviewing court defers to all reasonable inferences that the

23

magistrate could have made. *Id.* The determination whether an affidavit established probable cause "is a flexible and non[-]demanding standard." *Id.* When making this determination, reviewing courts should consider whether there are sufficient facts, coupled with inferences from those facts, to establish a fair probability that evidence of a particular crime will likely be found at the specified location. *Id.* at 62. In other words, reviewing courts should focus on the combined logical force of the facts included in the affidavit and not whether there are other facts that could have or even should have been included. *Id.* When determining the sufficiency of an affidavit to establish probable cause, a reviewing court is limited to the four corners of the affidavit. *Bonds v. State*, 403 S.W.3d 867, 873 (Tex. Crim. App. 2013). Whether the facts mentioned in an affidavit establish probable cause depends on the totality of the circumstances. *Id.*

**B. The affidavit supporting the search warrant for appellant's cell phone records is not conclusory and establishes probable cause.**

Appellant argues the trial court erred when it denied his motion to suppress because Detective Reese's affidavit is conclusory. In appellant's view, the affidavit lacks crucial, specific facts such as which robbery suspect was talking on the cell phone inside the store, the exact timing of "prior to and after the robbery," as well as the lack of any showing of who was actually using the relevant cell phones during those times. We disagree that, under the appropriate standard of review, Detective Reese's affidavit was insufficient to establish probable cause.

In his affidavit, Detective Reese stated that he was the officer assigned by the Houston Police Department to investigate the robbery at the Pak's Tiger Express store located on West Alabama Street. Reese went on to state that the clerk, Deegefa, informed him that the unarmed suspect was talking on a cell phone while "canvassing out the store" prior to the robbery. Reese also reported that one

24

of the victims followed the suspects to the residence at 401 Sul Ross, where he found his cell phone that had been taken by the unarmed robbery suspect. Reese then stated that he talked to James Nielsen, who lived at 401 Sul Ross. Neilsen told Reese he saw a man climb over his fence and get into a Toyota Camry. Nielsen wrote down the Camry's license plate number and turned it over to the police. Reese reported that, using that license plate number, he learned the Camry was registered to Shirley Sweed, who told him that her husband, Reginald Sweed, drove the car. Reese then reported that he talked to Sweed, who told him his cell phone number and consented to Reese obtaining copies of his cell phone records. Reese explained that he had examined Sweed's cell phone records and determined that Sweed was communicating with another cell phone prior to and after the robbery. Reese then stated that he believed this number, the target of the requested search warrant, would provide evidence related to the Pak's Tiger Express robbery.

We hold that Reese's affidavit is not conclusory because the facts stated therein, and reasonable inferences to be drawn from those facts, provided the magistrate a substantial basis conclude there was a fair probability that the records for the cell phone with which Sweed was communicating prior to and after the robbery would provide evidence of the offense or that a particular person committed the offense. *See Gabriel v.* State, 290 S.W.3d 426, 434–35 (Tex. App.—Houston [14th Dist.] 2009, no pet.) (holding affidavit was not conclusory because it provided substantial basis for magistrate to conclude search warrant would uncover further evidence of theft); *Uresti v. State*, 98 S.W.3d 321, 335 (Tex. App.—Houston [1st Dist.] 2003, no pet.) (same). We therefore overrule appellant's sixth issue.

**VII.   The record establishes that the trial court had the opportunity to review the challenged search warrant and affidavit.**

As discussed in part VI above, appellant filed a motion to suppress his cell phone records based on the argument that the supporting affidavit failed to establish probable cause.  Appellant attached the search warrant and supporting affidavit to his motion, which is included in the appellate record.  In addition, the State questioned Reese about the search warrant during the hearing on appellant's motion to suppress.  Now, in his seventh issue, appellant argues that the trial court erred when it denied his motion to suppress because the State did not produce the search warrant and the affidavit for inspection by the trial court.

Appellant cites *Miller v. State* in support of his argument.  736 S.W.3d 643, 647–48 (Tex. Crim. App. 1987) (quoting *Gant v. State*, 649 S.W.2d 30, 33 (Tex. Crim. App. 1979)).  In *Miller*, the Court of Criminal Appeals observed that error will result if the State relies on a warrant and the record does not reflect that the warrant was exhibited to the trial court for a ruling.  *Id.* at 648.  The purpose behind this requirement is to ensure that the trial court had the opportunity to inspect the challenged documents and determine whether probable cause existed and the defendant's rights were protected.  *Underwood v. State*, 967 S.W.2d 925, 927 (Tex. App.—Beaumont 1998, pet. ref'd).  Because the record reflects that the trial court had this opportunity, we overrule appellant's seventh issue.  *See Cannady v. State*, 582 S.W.2d 467, 469 (Tex. Crim. App. [Panel Op.] 1979) (rejecting defendant's contention that State did not produce search warrant during hearing because reporter's notes of hearing indicate witness identified warrant and record included copy of affidavit and portion of warrant).

## CONCLUSION

Having overruled all issues raised by appellant in this appeal, we affirm the trial court's judgment.

/s/ J. Brett Busby
   Justice

Panel consists of Justices Christopher, McCally, and Busby.

Do Not Publish — TEX. R. APP. P. 47.2(b).