**The STATE of Texas, Appellant,**

**v.**

**Brian K. DUGAS, Appellee.**

**No. 14–08–00905–CR.**

Court of Appeals of Texas,
Houston (14th Dist.).

July 28, 2009.

Rehearing Overruled Sept. 10, 2009.

Kenneth Magidson, Houston, TX, for appellants.

Jed Ross Silverman, Houston, TX, for appellees.

Panel consists of Justices ANDERSON, GUZMAN, and BOYCE.

## OPINION

EVA M. GUZMAN, Justice.

Appellee Brian Dugas was charged by information with the misdemeanor offense of driving while intoxicated. He filed a motion to suppress the results of his blood alcohol test on the ground that the search warrant affidavit failed to establish probable cause. Following a hearing, the trial court granted appellee's motion. On interlocutory appeal, the State challenges the trial court's grant of the motion to suppress. We reverse and remand for further proceedings.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On March 15, 2008, Officer A.W. Barr with the Houston Police Department arrested appellee for driving while intoxicated. After being transported to the police station, appellee refused to consent to a breath or blood test. Officer Barr prepared a blood search warrant affidavit and presented it to a magistrate judge. The affidavit set forth the following facts:

- On March 15, 2008, Officer Barr observed a driver fail to maintain a single lane of traffic and fail to signal a lane change.
- Based upon his observations, Officer Barr initiated a traffic stop.
- The driver was slow to respond but eventually stopped approximately five blocks later.
- After identifying the driver as appellee, Officer Barr detected a moderate odor of alcohol emanating from him and noticed that he slurred his speech and was unsteady on his feet after exiting his vehicle.
- When Officer Barr asked appellee if he had consumed any alcoholic beverages, appellee replied that he had consumed four beers.
- Officer Barr administered three field sobriety tests: the horizontal gaze nystagmus (HGN) test, the walk-and-turn test, and the one-leg stand test.
- During the HGN test, Officer Barr observed six of the six observable clues. Based on his training and experience, Officer Barr knew that four or more clues are a reliable indicator of intoxication.
- During the walk-and-turn test, he observed five of the eight observable clues. Based on his training and experience, Officer Barr knew that four or more clues are a reliable indicator of intoxication.
- During the one-leg stand test, he observed three of the four observable clues. Based on his training and experience, Officer Barr knew that four or more clues are a reliable indicator of intoxication.
- Officer Barr arrested appellee for driving while intoxicated and transported him to the police station.
- When he was asked to submit a specimen for testing, appellee became dazed and confused, took an unusually

long time to decide, and then refused both the breath and blood tests. Based on his training and experience, Officer Barr knew that appellee's refusal was a violation of the implied consent law.

On March 15, 2008, at 6:03 a.m., the magistrate signed the search warrant. Appellee's blood was subsequently drawn and tested.

Appellee filed a motion to suppress the result of the blood test contending that the affidavit failed to state probable cause on several grounds. At the hearing on the motion, he specifically argued that because the affidavit failed to include the time the alleged offense occurred, there was no basis upon which the magistrate could have determined whether appellee's blood contained evidence of a crime. Thus, he reasoned, the facts in the affidavit were stale and did not establish probable cause to support issuance of the warrant. At the conclusion of the hearing, the trial court stated as follows:

> The Court finds that the time in the drawing of blood is a critical issue. Because when you're dealing with blood, you're dealing with absorption, elimination, and it becomes less accurate. And the Court finds that the Motion to Suppress will be granted because there is no time. Without even moving on to other issues in the warrant, that there is no time stated in the affidavit; and, therefore, the Motion to Suppress the Blood is granted.

On September 8, 2008, the trial court signed the written order granting appellee's motion to suppress the blood test. The State timely filed this appeal.

## II. ANALYSIS

### A. Standard of Review

We apply a bifurcated standard of review to a trial court's ruling on a motion to suppress evidence. *Maxwell v. State,* 73 S.W.3d 278, 281 (Tex.Crim.App. 2002); *Carmouche v. State,* 10 S.W.3d 323, 327 (Tex.Crim.App.2000). We give almost total deference to the trial court's determination of historical facts that depend on credibility and review de novo the trial court's application of the law to those facts. *Maxwell,* 73 S.W.3d at 281; *Carmouche,* 10 S.W.3d at 327. We also review do novo the trial court's application of the law of search and seizure. *State v. Ross,* 32 S.W.3d 853, 856 (Tex.Crim.App.2000). But appellate review of an affidavit in support of a search warrant is not de novo; rather, great deference is given to the magistrate's determination of probable cause. *Illinois v. Gates,* 462 U.S. 213, 236–37, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983).

### B. Applicable Law

Generally, taking a blood sample is a search and seizure within the meaning of the Fourth Amendment to the United States Constitution. *Schmerber v. California,* 384 U.S. 757, 767, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966). Therefore, Article 1, Section 9 of the Texas Constitution requires that a search warrant be used. *Escamilla v. State,* 556 S.W.2d 796, 799 (Tex. Crim.App.1977). Pursuant to Texas Code of Criminal Procedure article 18.02(10), a search warrant may be issued to search for and seize, *inter alia,* "property or items ... constituting evidence of an offense or constituting evidence tending to show that a particular person committed an offense." TEX.CODE CRIM. PROC. ANN. art. 18.02(10) (Vernon 2005). Blood is an "item" of evidence within the meaning of article 18.02(10). *Muniz v. State,* 264 S.W.3d 392, 396 (Tex.App.-Houston [1st Dist.] 2008, no pet.).

The issuance of a search warrant for "items" in article 18.02(10) re-

quires that the peace officer first present to a magistrate a sworn affidavit setting forth sufficient facts to establish probable cause that (1) a specific offense has been committed; (2) the specifically described property or items to be searched for or seized constitute evidence of that offense or evidence that a particular person committed that offense; and (3) the property or items constituting such evidence are located at or on the particular person, place, or thing to be searched. TEX.CODE CRIM. PROC. ANN. art. 18.01(c) (Vernon Supp. 2007). The test for determining probable cause is whether the magistrate had a substantial basis for concluding that a search would uncover evidence of wrongdoing. *Id.* at 236, 103 S.Ct. 2317. Probable cause to support the issuance of a search warrant exists where the facts submitted to the magistrate are sufficient to justify a conclusion that the object of the search is probably on the premises to be searched at the time the warrant is issued. *Cassias v. State,* 719 S.W.2d 585, 587 (Tex. Crim.App.1986); *see also Rodriguez v. State,* 232 S.W.3d 55, 60 (Tex.Crim.App. 2007) ("Probable cause exists when, under the totality of the circumstances, there is a 'fair probability' that contraband or evidence of a crime will be found at the specified location."). Neither federal nor Texas law defines precisely what degree of probability suffices to establish probable cause. *Rodriguez,* 232 S.W.3d at 61. We must consider whether there are sufficient facts, coupled with inferences from those facts, to establish a "fair probability" that evidence of a particular crime will likely be found at a given location. *Id.* The issue is not whether there are other facts that could have, or even should have, been included in the affidavit; instead we focus on the combined logical force of facts that are in the affidavit. *Id.*

When reviewing an issuing magistrate's determination, we should interpret the affidavit in a commonsensical and realistic manner, recognizing that the magistrate may draw reasonable inferences. *Id.* Whether the facts mentioned in the affidavit are adequate to establish probable cause depends on the totality of the circumstances. *Ramos v. State,* 934 S.W.2d 358, 362–63 (Tex.Crim.App.1996). To justify a magistrate's finding that an affidavit is sufficient to establish probable cause to issue a search warrant, the facts set out in the affidavit must not have become "stale" when the magistrate issues the search warrant. *McKissick v. State,* 209 S.W.3d 205, 214 (Tex.App.-Houston [1st Dist.] 2006, pet. ref'd); *Serrano v. State,* 123 S.W.3d 53, 60 (Tex.App.-Austin 2003, pet. ref'd); *Guerra v. State,* 860 S.W.2d 609, 611 (Tex.App.-Corpus Christi 1993, pet. ref'd). Probable cause ceases to exist when, at the time the search warrant is issued, it would be unreasonable to presume the items remain at the suspected place. *McKissick,* 209 S.W.3d at 214. The proper method to determine whether the facts supporting a search warrant have become stale is to examine, in light of the type of criminal activity involved, the time elapsing between the occurrence of the events set out in the affidavit and the time the search warrant was issued. *Id.* With these general principles in mind, we turn now to the affidavit in this case.

## C. The Affidavit

In its sole issue, the State contends that the trial court erred in granting appellee's motion to suppress because the search warrant affidavit showed that appellee's blood probably contained evidence of intoxicants at the time the warrant was issued. Appellee argues that the trial court properly granted his motion because the affidavit did not indicate the time of

the alleged offense and, thus, the facts in the affidavit had become stale.

We are not aware of any cases, and neither party has directed us to any, addressing the staleness issue related to blood-alcohol content in the context of probable cause to support a search warrant.[1] Appellee instead directs us to several cases addressing the impact of the passage of time on the admissibility of the results of a blood alcohol test.[2] *See State v. Mechler,* 153 S.W.3d 435, 437 (Tex.Crim. App.2005); *Mata v. State,* 46 S.W.3d 902, 907 (Tex.Crim.App.2001). But these cases concern the admissibility of expert testimony and intoxilyzer test results—not probable cause to issue a search warrant to collect blood evidence. As these cases are unavailing, we conclude that we must consider whether it was unreasonable for the magistrate to presume that evidence of intoxication would be found in appellee's blood at the time this warrant was issued. *See McKissick,* 209 S.W.3d at 214.

First, although the affidavit does not reflect the time that the stop occurred, it is undisputed that the alleged offense and the issuance of the warrant occurred the same day; indeed, the maximum amount of time between the traffic stop and the issuance of the warrant was six hours and three minutes because the magistrate signed the warrant at 6:03 a.m. on the same date of appellee's arrest. *See Rodriguez,* 232 S.W.3d at 61 (directing interpretation of affidavit in support of search warrant to be performed in a common-sense manner and recognizing magistrate may draw reasonable inferences from facts of affidavit). Further, the affidavit reflects the following facts: (1) Officer Barr observed appellee failing to maintain a single lane of traffic and failing to indicate a lane change; (2) Officer Barr detected a moderate odor of alcohol and noticed that appellee slurred his speech and was unsteady on his feet after exiting his vehicle; (3) appellee told Officer Barr that he had consumed four beers; (4) Officer Barr observed sufficient clues that were reliable indicators of intoxication during two of the three field sobriety tests administered to appellee; and (5) when appellee was asked to submit a specimen for testing at the police station, appellee became dazed and confused, took an unusually long time to decide, and then refused breath and blood tests.

Deferring to the magistrate's determina-

1. In *Muniz v. State,* the appellant argued that the trial court erred in overruling his motion to suppress the result of his blood alcohol test because the blood sample was drawn without a proper search warrant. 264 S.W.3d 392, 394 (Tex.App.-Houston [1st Dist.] 2008, no pet.). In a sub-issue, he asserted that the information contained in the affidavit was stale because the magistrate could not determine from the affidavit when the alleged offense took place. *Id.* at 398. Because appellant failed to properly brief the point for review, however, the First Court of Appeals did not address his argument. *Id.* at 399.

2. We note that at least one other state has concluded that the passage of time between the alleged offense and the blood alcohol test result goes to the weight, rather than the admissibility, of such evidence. *People v. Wager,* 460 Mich. 118, 126, 594 N.W.2d 487, 491 (1999). Additionally, other states have drafted their driving while intoxicated statutes to expressly provide that a certain blood alcohol level determined within a specific amount of time since driving constitutes a criminal offense. *See State v. Mechler,* 153 S.W.3d 435, 446 n. 19–20 (Tex.Crim.App.2005) (Cochran, J., concurring) (citing Alaska statute making it a crime to operate a motor vehicle when a person has a blood alcohol content of 0.08% determined by a chemical test taken within four hours after the operation of the vehicle and Arizona law criminalizing blood alcohol content of more than 0.08% within two hours of driving).

tion of probable cause[3] and considering that a maximum of six hours had elapsed since appellee was stopped by Officer Barr, we cannot say it was unreasonable for the magistrate to presume that there still would be some evidence of intoxication found in appellee's blood when the warrant was signed. We therefore conclude that the trial court erred in granting appellee's motion to suppress. We sustain the State's issue.

### III. CONCLUSION

Having sustained the State's sole issue, we reverse the trial court's order on the motion to suppress and remand for further proceedings consistent with this opinion.

---

**3.** *See Gates,* 462 U.S. at 236–37, 103 S.Ct. 2317.