# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

===

### NO. 03-09-00575-CR

===

**Peggy Jezek, Appellant**

**v.**

**The State of Texas, Appellee**

===

### FROM THE COUNTY COURT OF LAMPASAS COUNTY,
### NO. 16,750, HONORABLE WAYNE L. BOULTINGHOUSE, JUDGE PRESIDING

===

### M E M O R A N D U M   O P I N I O N

Peggy Jezek was charged with the offense of driving while intoxicated. *See* Tex. Penal Code Ann. § 49.04 (West 2003) (person commits offense if he operates motor vehicle in public place while intoxicated). After her arrest, a search warrant was issued to obtain a sample of her blood. When the case was set for trial, Jezek filed a motion to suppress the blood test on the ground that the affidavit filed to obtain the warrant "was insufficient to establish probable cause." The trial court denied the motion to suppress. Ultimately, Jezek entered into a plea agreement but reserved the right to appeal the trial court's determination regarding her motion to suppress. After Jezek pleaded guilty, the trial court imposed a sentence of three days' imprisonment. We will affirm the judgment of the trial court.

## BACKGROUND

After leaving a party in June 2008, Jezek was pulled over by Deputy Dean Werlinger. Ultimately, Deputy Werlinger performed field sobriety tests on Jezek, arrested her, and drove her to jail. Once Jezek was taken to jail, Deputy Werlinger requested that Officer Steve Sheldon help administer an intoxilizer test. While in custody, Jezek refused to give either a breath or a blood sample. Because of Jezek's refusal, Sheldon prepared an affidavit for a search warrant for Jezek's blood. After reading the affidavit, a magistrate issued a search warrant at 4:52 a.m. on June 29, 2008. Once the search warrant was issued, Werlinger transported Jezek to a local hospital, and a blood sample was taken at 5:05 a.m.

The issue on appeal relates to the contents of the search warrant affidavit. As described above, the affidavit was prepared by Officer Sheldon. The affidavit listed Officer Sheldon's qualifications, including extensive training "in the investigation of Traffic and Driving While Intoxicated Offenses." Further, the affidavit related that Officer Sheldon was asked to assist in the case at approximately 3:42 a.m. on June 29, 2008.

In the affidavit, Sheldon specified that it was his belief that "on or about the 29th day of June, 2008," Jezek operated a motor vehicle in a public place while intoxicated.[1] The affidavit also chronicled the events leading up to Jezek's arrest. In particular, the affidavit stated that Deputy Werlinger noticed Jezek driving with her high beams on, flashed his headlights three times to prompt Jezek to use her low beams, and eventually pulled Jezek over for failing to dim her headlights. Further, the affidavit revealed that Jezek told Deputy Werlinger that "she was lost and was trying to

---

[1] Although the time of the traffic stop was not listed in the affidavit, the stipulation of evidence agreed to by the State and by Jezek stated that the traffic stop occurred at approximately 3:00 a.m. on June 29, 2008.

2

get to Waco." In addition, the affidavit communicated that Deputy Werlinger attempted to give Jezek directions but that Jezek seemed "confused." Moreover, the affidavit revealed that Deputy Werlinger asked Jezek if she had been drinking and that Jezek stated that "she had some to drink earlier in the evening." The affidavit also explained that after Jezek admitted that she had been drinking, Deputy Werlinger asked Jezek to step out of the vehicle so that he could perform field sobriety tests. Further, the affidavit communicated that as Jezek exited the vehicle, Deputy Werlinger smelled alcohol.

The affidavit also described the following sobriety tests that Deputy Werlinger performed: the horizontal gaze nystagmus, the walk and turn, and the one leg stand. In addition, the affidavit stated that individuals displaying four or more clues on the horizontal-gaze-nystagmus test, two or more clues on the walk-and-turn test, or two or more clues on the one-leg-stand test are likely legally intoxicated. Moreover, the affidavit revealed that when Deputy Werlinger performed the three tests, he observed six clues on the horizontal-gaze-nystagmus test, six clues on the walk-and-turn test, and three clues on the one-leg-stand test.

In addition to reporting the test results, the affidavit stated that after performing the tests, Deputy Werlinger arrested Jezek for driving while intoxicated and drove her to the police station. Further, the affidavit revealed that Deputy Werlinger and Officer Sheldon repeatedly asked Jezek to take the intoxilizer test, that Jezek never stated whether she would or would not submit to the test, that they eventually warned Jezek that her decision to not provide an answer would be treated as a refusal to take the test, and that they ultimately treated her responses as a refusal. Regarding the refusal, the affidavit also specified that intoxicated individuals often refuse to submit

3

breath samples. Finally, the affidavit requested, in light of the preceding, that the magistrate issue a search warrant authorizing the police to obtain a sample of Jezek's blood.

**DISCUSSION**

In one issue on appeal, Jezek asserts that the trial court erred by denying her motion to suppress. When reviewing a trial court's ruling on a motion to suppress, appellate courts apply a bifurcated standard of review. *See Muniz v. State*, 264 S.W.3d 392, 395 (Tex. App.—Houston [1st Dist.] 2008, no pet.). Under that standard, appellate courts "give almost total deference to a trial court's determinations of historical facts and review de novo the trial court's application of the law." *Id.*

Generally speaking, obtaining a blood sample is a search and seizure. *State v. Dugas*, 296 S.W.3d 112, 115 (Tex. App.—Houston [14th Dist.] 2009, pet. ref'd). Accordingly, a search warrant must be issued before a sample may be taken. *Id.* The code of criminal procedure allows for the issuance of a warrant to seize "property or items" that "constitute evidence of an offense." Tex. Code Crim. Proc. Ann. art. 18.02(10)(West 2005). "[P]roperty or items" has been construed to included blood samples. *Muniz*, 264 S.W.3d at 396. Before a search warrant may properly be issued, a sworn affidavit must be filed setting forth sufficient facts to show probable cause: "(1) that a specific offense has been committed, (2) that the specifically described property or items that are to be searched for or seized constitute evidence of that offense or evidence that a particular person committed that offense, and (3) that the property or items constituting evidence to be searched for or seized are located at or on the particular person, place, or thing to be searched." *See* Tex. Code Crim. Proc. Ann. art. 18.01(c) (West Supp. 2009).

4

Probable cause exists when a magistrate has "a substantial basis for concluding that a search would uncover evidence of wrongdoing." *Dugas*, 296 S.W.3d at 116. In other words, probable cause exists when the facts before the magistrate justify a conclusion that the object to be obtained is probably at the location to be searched at the time that the warrant is to issue. *Cassias v. State*, 719 S.W.2d 585, 587 (Tex. Crim. App. 1986). Stated differently, probable cause no longer exists if it would be unreasonable to assume at the time the warrant is to issue that the item to be obtained is at the location to be searched. *Dugas*, 296 S.W.3d at 116.

When reviewing a magistrate's decision to issue a warrant, "trial and appellate courts apply a highly deferential standard" in light of the "constitutional preference" for actions committed pursuant to a warrant. *Rodriguez v. State*, 232 S.W.3d 55, 61 (Tex. Crim. App. 2007); *see also Dugas*, 296 S.W.3d at 115 (explaining that review of search warrant affidavit is "not de novo" and that "great deference is given to the magistrates determination of probable cause"). For that reason, reviewing courts should interpret affidavits "in a commonsensical and realistic manner, recognizing that the magistrate may draw reasonable inferences." *Rodriguez*, 232 S.W.3d at 61. Furthermore, when reviewing courts are uncertain whether the affidavit was sufficient, they "defer to all reasonable inferences that the magistrate could have made." *Id.* In determining whether there was probable cause to issue the search warrant, reviewing courts should consider "whether there are sufficient facts, coupled with inferences from those facts, to establish a 'fair probability' that evidence of a particular crime will likely be found at a given location." *Id.* at 62. In other words, reviewing courts should focus on "the combined logical force of the facts that *are* in the affidavit" and not whether there are other facts "that could have, or even should have, been included." *Id.* For the warrant to be proper, the facts set out in the affidavit must not have been "stale" at the time that

5

the warrant issued. *Serrano v. State*, 123 S.W.3d 53, 60 (Tex. App.—Austin 2003, pet. ref'd). Courts determine whether the facts were stale by considering the lapse in time between the events set out in the affidavit and the issuance of the warrant. *Dugas*, 296 S.W.3d at 116.

In her briefs, Jezek asserts that the affidavit failed to establish probable cause because it failed to establish a fair probability that alcohol would be found in her blood at the time that the search warrant was signed. In particular, Jezek contends that the affidavit failed to demonstrate probable cause because it did not establish "when the traffic stop had taken place."[2] Although Jezek acknowledges that the affidavit mentioned that Deputy Werlinger pulled Jezek over, she notes that the affidavit did not specifically identify the time at which the traffic stop occurred. Further, Jezek highlights that the affidavit only related that the alleged crime occurred "on or about" the day that the search warrant issued. In addition, Jezek points to the portion of the affidavit in which Officer Sheldon related her assertion that she had been drinking "earlier in the evening." In light of the preceding, Jezek insists that "we can only infer that" the traffic stop "likely took place sometime after 4:00 or 5:00 p.m. on the day before th[e] warrant issued." Accordingly, Jezek contends that "there is insufficient evidence set forth in the affidavit to conclude that there is a 'fair probability' that evidence of drinking would still exist in the blood at 4:52 a.m." when the warrant issued. Stated differently, Jezek insists that it was not possible to determine whether the evidence in the affidavit was stale at the time that the warrant was issued because "it is impossible to examine the time lapse between the traffic stop and the issuance of the search warrant."

---

[2] As a preliminary matter, we note that we are not confronted with determining whether the information contained in the affidavit would be sufficient to render the results of the blood-alcohol test admissible. Rather, the issue to be addressed is whether the facts that were in the affidavit along with all reasonable inferences from those facts establish a fair probability that alcohol would be found in Jezek's blood.

6

Although Jezek insists that the phrase "earlier in the evening" can literally only mean sometime around 4:00 or 5:00 p.m. on the day before the warrant was issued, a magistrate could have reasonably inferred a much later time that she had consumed alcohol from her use of the word "evening." *See Webster's New Collegiate Dictionary* 396 (1973) (defining "evening" as meaning, among other things, "the period from sunset or the evening meal to bedtime"). Furthermore, given that the affidavit stated that Deputy Werlinger pulled Jezek over for failing to dim her high beams; given that Officer Sheldon stated in the affidavit that he was called to help conduct an intoxilyzer test on Jezek at 3:42 a.m. on June 29, 2008; and given that the police have every incentive to obtain an accurate alcohol-test result before the alcohol is filtered from the body, a magistrate could reasonably infer that the traffic stop occurred late on June 28, 2008, or early on June 29, 2008, which is well past the time suggested by Jezek.

Further, the affidavit relates the following facts: (1) Deputy Werlinger pulled Jezek over for failing to dim her high beams despite being prompted on three separate occasions; (2) Jezek acted confused when talking with Deputy Werlinger; (3) Jezek admitted to drinking prior to driving; (4) Deputy Werlinger detected the smell of alcohol when Jezek exited her car; (5) there were several indicators of intoxication present during each of the three field sobriety tests Jezek performed; and (6) Jezek repeatedly refused to answer whether she would submit either a breath or a blood sample and was told immediately after the last time that she was asked that her failure to answer the question would be treated as a refusal. *See id.* at 117 (outlining similar factors supporting magistrate's determination).[3]

---

[3] In her brief, Jezek asserts that this Court should not rely on *State v. Dugas* in our analysis because the facts in *Dugas* are distinguishable. *See* 296 S.W.3d 112 (Tex. App.—Houston [14th Dist.] 2009, pet. ref'd). When making this assertion, Jezek notes that the affidavit in *Dugas*

Bearing in mind the deferential standard by which we review a magistrate's probable cause determination and considering the reasonable inferences that the magistrate could have made, we cannot conclude that it was unreasonable for the magistrate to surmise that there would still be some alcohol in Jezek's blood at the time the warrant was issued. Accordingly, we overrule Jezek's issue on appeal.

## CONCLUSION

Having overruled Jezek's sole issue on appeal, we affirm the judgment of the trial court.

David Puryear, Justice

Before Justice Patterson, Puryear and Henson

Affirmed

Filed:   August 31, 2010

Do Not Publish

---

showed that Dugas failed to maintain a single lane while driving, slurred his speech, was unsteady on his feet, admitted to drinking four beers, and acted "dazed and confused," *see id.* at 114, but she asserts that her level of intoxication was not sufficient "to immediately alert Deputy Werlinger" and, accordingly, cannot serve to justify a determination that there was probable cause in this case.

Although Jezek points out that there are differences between the affidavit in this case and in *Dugas*, we find nothing in the opinion in *Dugas* that limits its analysis to identical fact patterns. Moreover, although nothing in the affidavit in this case indicated that Jezek was swerving or slurred her speech, Jezek, like Dugas, had multiple indicators of intoxication in all three of her field sobriety tests, acted confused, admitted to drinking, smelled of alcohol, and took a long time when deciding whether to provide a breath or blood sample. For those reasons, we find the analysis in *Dugas* instructive.

8