

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-17-00092-CR

JONATHON FARSHID FAYYAZI          APPELLANT

V.

THE STATE OF TEXAS          STATE

----------

FROM COUNTY CRIMINAL COURT NO. 1 OF TARRANT COUNTY
TRIAL COURT NO. 1455511

----------

### MEMORANDUM OPINION[1]

----------

In two points, Appellant Jonathon Farshid Fayyazi appeals his conviction for driving while intoxicated (DWI). *See* Tex. Penal Code Ann. § 49.04 (West Supp. 2017). We affirm.

---

[1]*See* Tex. R. App. P. 47.4.

**Background**

Officer Delaney Green with the Southlake Police Department was on patrol in her marked patrol car in Southlake in the early morning hours of April 9, 2016. She testified at trial that around 3:00 a.m. she was traveling north on Davis Boulevard when she noticed a vehicle—later identified as being driven by Appellant—that appeared to be traveling at "a very high rate of speed." Officer Green recounted how she turned on her in-car radar detector, determined that Appellant was traveling 58 miles an hour in a 45-mile-an-hour zone, pulled over to allow Appellant to pass her, and then began to follow him with her emergency lights activated. Appellant did not immediately stop but instead "sped up to 68 miles an hour . . . before coming to a slowed down speed" near an intersection, drove through the intersection, and continued driving while passing several side streets that Officer Green felt would have been safe places to stop. Although Officer Green testified that Appellant continued to drive for "[a]pproximately eight, nine minutes" after she began to follow him, according to the dashboard-camera recording, which was admitted into evidence, only three minutes elapsed between the time when Officer Green turned on her emergency lights and began to follow him and when Appellant stopped.[2]

Officer Green further testified,

_____

[2]When asked about this discrepancy at trial, Officer Green attributed it to the fact that her adrenaline was rushing.

2

There were several times that I came over the loud speaker in the car and told [Appellant] to pull over on the side street that we were coming up on. [Appellant] continued to drive, slowed down, would speed up, had his turn signal on, would turn it off. He eventually was waving one of his arms out of the window at some point before he pulled into his neighborhood.

Officer Green admitted at trial—and such is reflected in the dashboard-camera recording—that he safely and properly made turns while driving, did not weave within or outside of his lane, and did not drive recklessly other than by speeding.

When Appellant did pull over and stop, Officer Green used her loud speaker to ask Appellant to place both hands out of the window so she could verify that he was not holding a weapon. She then cautiously approached the driver's side of Appellant's vehicle, at which time she immediately detected "a strong alcoholic beverage odor emitting from within the vehicle" and observed Appellant's "slurred speech, [and] red, watery, glassy eyes."

Officer Green testified that she asked Appellant to step out of the car and sit on the nearby curb and admitted that he did so without any trouble—he did not stumble or sway. According to Officer Green,[3] in their ensuing conversation Appellant explained that he had been coming home from downtown Fort Worth, where he had been at a bar with some friends. Officer Green also remembered Appellant stating that he had had a few drinks. Officer Green did not believe Appellant when he claimed that he did not stop immediately because he was

[3]Although Officer Green's statements were captured on the dashboard-camera recording, Appellant's statements are difficult to discern. There is also interference from the in-car radio system.

3

looking for a safe place to stop. Appellant declined Officer Green's request to participate in field sobriety tests.

Officer Green placed Appellant under arrest for DWI. She read him the DIC-24 warnings[4] and asked him to consent to providing a blood sample. Appellant refused, so Officer Green sought a warrant for his blood. Officer Green's search-warrant affidavit described her observation of Appellant speeding and then described his delay in pulling over after she initiated a traffic stop, including his slowing down, passing side streets, and waving his hand out of his window. Officer Green further described how she "immediately smelled a strong alcoholic beverage odor emitting from the driver" and Appellant's statement to her that he was coming from a bar in Fort Worth where he "had a few drinks." She continued, "[Appellant] slurred the few words that he spoke and his eyes appeared very red, watery and bloodshot." She cited his refusal to complete field sobriety tests or have his blood drawn. She concluded,

> Based on the totality of the above facts and circumstances, I had good reason to believe [Appellant] was intoxicated causing a temporary loss of his mental and physical faculties due to the introduction of alcohol, drugs and/or a combination of the two into his body. He was placed under arrest for Driving While Intoxicated—2nd.

---

[4]The DIC-24 is the Texas Department of Public Safety's standard form containing the written warnings required by the transportation code to be read to an individual arrested for DWI before a peace officer requests a voluntary blood or breath sample from a person. *See* Tex. Transp. Code Ann. § 724.015 (West Supp. 2017); *State v. Neesley*, 239 S.W.3d 780, 782 n.1 (Tex. Crim. App. 2007).

4

Her application was granted and a search warrant was issued; subsequent testing revealed a blood-alcohol content of 0.13.[5]

Following a jury trial, Appellant was convicted of DWI and sentenced to 200 days' confinement, suspended for 20 months' community supervision. This appeal followed.

**Discussion**

Appellant brings two points on appeal, both of which are related to the admissibility of the blood-test results. In his first point, Appellant argues that the trial court abused its discretion by overruling his objection to the results' admissibility because the State failed to lay the proper predicate. In his second point, he argues that the State erred by overruling his complaint that the search-warrant affidavit was insufficient to establish probable cause that Fayyazi was intoxicated.

**I. Related procedural background**

As part of his motion in limine, Appellant asked the trial court to restrict the State from mentioning the results of the blood test until "the warrant [was] determined to be sufficient." The State agreed to refrain from bringing up the blood-test results, so the trial court granted Appellant's motion in limine.

The trial court also addressed Appellant's objection to the sufficiency of the search-warrant affidavit at a pretrial hearing. Appellant's counsel argued that the

---

[5]The legal limit is 0.08. *See* Tex. Penal Code Ann. § 49.01(2)(B) (West 2011).

5

affidavit was factually insufficient because there was no indication that Appellant was driving recklessly and no field sobriety test results. Appellant's counsel also argued that the affidavit did not show probable cause for any offense because it referred to a "temporary loss of mental and physical faculties," a phrase that does not parallel the language of the DWI statute. *See* Tex. Penal Code Ann. § 49.09 (West Supp. 2017). The trial court overruled Appellant's objections.

Appellant reurged his objection to the search-warrant affidavit after the jury was chosen but before testimony began and asked for a running objection. The trial court did not reconsider its ruling and denied the request for a running objection, stating that Appellant had to object in front of the jury before he would be granted a running objection. During the testimony of the first witness—the nurse who drew Appellant's blood—Appellant's counsel objected "based on the objections that were previously stated in the record." The trial court overruled the objection, but granted Appellant a running objection.

Appellant's counsel objected again during the testimony of Katie Scott, an employee of the Tarrant County Medical Examiner's Office who testified to its receipt of Appellant's blood, how the blood was handled while in its care, the testing process, and the test results. When the State offered the test result as an exhibit, Appellant's counsel asked the trial court to "note [his] previous objection." The trial court inquired, "Is that your only objection?" to which Appellant's counsel replied, "Wasn't shown to comply with the Kelly Daubert." A bench conference was held off the record, and when the trial court returned to the record, it

6

sustained Appellant's objection. Scott then testified again to the testing process and confirmed that her lab is accredited. She also testified that she had provided testimony as an expert toxicology witness in other trials in the past. When the State reoffered the test result as an exhibit, Appellant's counsel again objected, stating, "I still don't think they've qualified this witness as an expert." The trial court overruled this objection and admitted the test-result exhibit.

## II. Failure to lay the proper predicate

In his first point, Appellant argues that the trial court erred by admitting the evidence of the blood-test results because the State failed to lay a proper predicate for their admission through Scott's testimony. Appellant argues that the State failed to show: (1) proper operation of the testing equipment by someone qualified to do so, (2) that Scott knew how to check the machine for accuracy, (3) that Scott checked the machine for accuracy before testing Appellant's blood, and (4) that Scott was qualified to interpret the results.

In general, there are three areas of objections to expert testimony: (1) qualification, (2) reliability, and (3) relevance. *Vela v. State*, 209 S.W.3d 128, 131 (Tex. Crim. App. 2006). Those portions of Appellant's arguments that relate to the reliability and relevance of the test results—including his arguments that there was no proof that the testing equipment was properly operated or checked for accuracy—were not preserved for our review. Any objections on those grounds were presumably subsumed in Appellant's first objection that Scott's

7

testimony "[w]asn't shown to comply with the Kelly Daubert,"[6] and that objection was sustained. Without an adverse ruling, there is nothing for us to review. *See* Tex. R. App. P. 33.1(a)(2).

The only objection preserved for our review is Appellant's objection that Scott was not properly qualified as an expert witness, a determination we review for a clear abuse of discretion. *Wyatt v. State*, 23 S.W.3d 18, 27 (Tex. Crim. App. 2000).

But even still, if we were to find that Scott's testimony did not show that she was qualified to testify to the blood-test results, any error in the admission of the blood-test results through her testimony was harmless. We would only reverse for such error if it affected Appellant's substantial rights. Tex. R. App. P. 44.2(b); *see Mosley v. State*, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998) (op. on reh'g), *cert. denied*, 526 U.S. 1070 (1999). Here, it did not. The same information was admitted without objection through Dr. Robert Johnson, the chief toxicologist at the Tarrant County Medical Examiner's Office, who testified about the blood-test results immediately after Scott. Because it was admitted elsewhere without any objection, any error in the blood-test results' admission through Scott's testimony was harmless. *See Aggers v. State*, 114 Tex. Crim. 391, 392–93 (1930) (holding any error in admitting officers' testimony was harmless where defendant testified to the same facts himself); *Ashcraft v. State*,

---

[6]We note that we do not know the full extent of this objection because the bench conference following the objection was off the record.

934 S.W.2d 727, 739–40 (Tex. App.—Corpus Christi 1996, pet. ref'd) (holding similarly where another witness testified to the same fact).

Based on the record before us, any error in admitting the blood-test results through Scott's testimony was either forfeited or harmless. We therefore overrule Appellant's first point.

## III. Search-warrant affidavit

In his second point, Appellant argues that the trial court erred by allowing the admission of the blood-test results over his objection to the sufficiency of Officer Green's search-warrant affidavit.

We interpret Appellant's objection as a motion to suppress the evidence, and as such we will review the trial court's ruling under a bifurcated standard of review. *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). We give almost total deference to a trial court's rulings on questions of historical fact and application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor, but we review de novo application-of-law-to-fact questions that do not turn on credibility and demeanor. *Amador*, 221 S.W.3d at 673; *Estrada v. State*, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005); *Johnson v. State*, 68 S.W.3d 644, 652–53 (Tex. Crim. App. 2002).

A warrant is required to obtain a blood sample from an individual suspected of DWI. *State v. Villarreal*, 475 S.W.3d 784, 808 (Tex. Crim. App. 2014), *cert. denied*, 136 S. Ct. 2544 (2016); *see also Missouri v. McNeely*, 569

9

U.S. 141, 165, 133 S. Ct. 1552, 1568 (2013). To obtain a warrant, law enforcement must present to a magistrate a sworn affidavit setting forth sufficient facts to establish probable cause that a specific offense has been committed, among other requirements. Tex. Code Crim. Proc. Ann. art. 18.01(c) (West Supp. 2017). Appellant contests whether Officer Green's search-warrant affidavit was sufficient to establish probable cause of DWI.

In reviewing the magistrate's determination of probable cause to issue a search warrant, we apply the deferential standard of review articulated by the United States Supreme Court in *Illinois v. Gates*, 462 U.S. 213, 236, 103 S. Ct. 2317, 2331 (1983). *Swearingen v. State*, 143 S.W.3d 808, 811 (Tex. Crim. App. 2004). Under that standard, we uphold the probable cause determination "so long as the magistrate had a 'substantial basis for . . . conclud[ing]' that a search would uncover evidence of wrongdoing." *Gates*, 462 U.S. at 236, 103 S. Ct. at 2331 (quoting *Jones v. United States*, 362 U.S. 257, 271, 80 S. Ct. 725, 736 (1960), *overruled on other grounds by U.S. v. Salvucci*, 448 U.S. 83, 100 S. Ct. 2547 (1980)); *see Swearingen*, 143 S.W.3d at 810; *see also State v. McLain*, 337 S.W.3d 268, 271–72 (Tex. Crim. App. 2011); *Flores v. State*, 319 S.W.3d 697, 702 (Tex. Crim. App. 2010).

In assessing the sufficiency of an affidavit for an arrest or a search warrant, we are limited to the four corners of the affidavit. *Jones v. State*, 833 S.W.2d 118, 123 (Tex. Crim. App. 1992), *cert. denied*, 507 U.S. 921 (1993). We must interpret the affidavit in a common sense and realistic manner, recognizing

10

that the magistrate was permitted to draw reasonable inferences. *Davis v. State*, 202 S.W.3d 149, 154 (Tex. Crim. App. 2006).

Appellant argues that the search-warrant affidavit fails to show probable cause for two reasons: (1) it is factually insufficient and (2) it uses the phrase "temporary loss of his mental and physical faculties" instead of the statutorily-worded phrase "not having the normal use of mental or physical faculties." *See* Tex. Penal Code Ann. § 49.01.

Appellant argues that the evidence was factually insufficient because there was no evidence of reckless driving and he did not stumble or sway when he exited his vehicle. But this ignores the evidence that was cited by Officer Green in her search-warrant affidavit:

(1) Appellant was speeding, traveling 58 miles an hour in a 45 mile-an-hour zone, in the early morning hours;

(2) Appellant did not pull over immediately when Officer Green activated her emergency lights and began to follow him. He passed several side streets that would have been safe to stop on;

(3) When she approached Appellant's vehicle, she "immediately smelled a strong alcoholic beverage odor";

(4) Appellant admitted that he was coming home from a bar;

(5) Appellant admitted he had had a few drinks;

(6) Appellant slurred his words; and

(7) Appellant's eyes were "very red, watery and bloodshot."

Even without evidence of reckless driving, stumbling, or swaying, these facts, considered as a whole, established a fair probability that evidence (a blood-

alcohol content over 0.08) of a crime (DWI) would be found.  Thus, these facts were sufficient to establish probable cause to justify a blood-test warrant.  *See, e.g.*, *Cotton v. State*, 686 S.W.2d 140, 142 & n.3 (Tex. Crim. App. 1985) (noting evidence of intoxication may include the odor of alcohol on one's breath or body, bloodshot eyes, slurred speech, unsteady balance, and a staggered gait); *State v. Dugas*, 296 S.W.3d 112, 117 (Tex. App.—Houston [14th Dist.] 2009, pet. ref'd) (holding search-warrant affidavit showed probable cause where it described defendant's erratic driving; detection of "moderate" odor of alcohol, slurred speech, and unsteadiness; defendant's statement that he had had four beers; detection of intoxication indicators during field sobriety tests; and defendant's "dazed and confused" appearance).  Unlike the search-warrant affidavit in *Farhat v. State*, which we found insufficient to establish probable cause for a DWI, Officer Green's affidavit explained her personal observations that led her to suspect Appellant was driving drunk.  337 S.W.3d 302, 307 (Tex. App.—Fort Worth 2011, pet. ref'd) (collecting cases describing factors that support a determination of probable cause for DWI).

Finally, we are not persuaded that Officer Green's use of the word "temporary" presents a fatal flaw to that determination.  Appellant appears to insist that Officer Green was required to parrot the exact language from the penal code's definition of "intoxicated"—namely, that Appellant did not have "the *normal* use of mental or physical faculties."  Tex. Penal Code Ann. § 49.01(2)(A) (emphasis added).  Appellant provides no authority for this proposition, nor have

12

we found any. We conclude that the two phrases are functionally equivalent except that Officer Green's statement added an additional fact—the reality that the loss of use was of a temporary, not permanent duration.

Viewing the facts alleged in the search-warrant affidavit as a whole, they were sufficient to support the magistrate's determination that probable cause existed to issue a search warrant for Appellant's blood. We therefore overrule Appellant's second point.

## Conclusion

Having overruled Appellant's two points, we affirm the trial court's judgment.

/s/ Bonnie Sudderth

BONNIE SUDDERTH
CHIEF JUSTICE

PANEL: SUDDERTH, C.J.; WALKER and MEIER, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: June 21, 2018