**Majority, Concurring, and Dissenting Panel Opinions of August 10, 2017 Withdrawn; Reversed and Remanded and En Banc Majority and Dissenting Opinions filed August 31, 2018.**



**In The**

# Fourteenth Court of Appeals

---

**NO. 14-15-01005-CR**
**NO. 14-15-01006-CR**

---

**NATHAN RAY FOREMAN, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 177th District Court**
**Harris County, Texas**
**Trial Court Cause Nos. 1374837 & 1374838**

---

## E N   B A N C   D I S S E N T I N G   O P I N I O N

Ubiquitous. Surveillance cameras inside commercial properties have become ubiquitous. Convenience stores. Doggy daycare facilities. Casinos. Retail check-out lines. Interior commercial video surveillance systems, designed to prevent internal theft, vandalism, and other forms of criminal activity from occurring on an

owner's property or to catch those responsible for the activity, are everywhere.

Yet, the majority holds that it was unreasonable for a magistrate to conclude that surveillance video or equipment had been installed inside the Dreams Auto Customs building. Because I find that this inference, supported by the facts and circumstances articulated in the search warrant affidavit, is reasonable, I respectfully dissent. I would hold that the trial court did not err in denying appellant's motion to suppress and affirm the trial court's judgment.

The Code of Criminal Procedure allows the issuance of a search warrant to seize property or items that constitute evidence of an offense. *State v. Dugas*, 296 S.W.3d 112, 115 (Tex. App.—Houston [14th Dist.] 2009, pet. ref'd) (citing Tex. Code Crim. Proc. art. 18.02(10)). Before a search warrant may issue, a sworn affidavit must be filed setting forth sufficient facts to show probable cause that (1) a specific offense has been committed; (2) the specifically described property or items to be searched for or seized constitute evidence of that offense or evidence that a particular person committed that offense; and (3) the property or items constituting such evidence are located at or on the particular person, place, or thing to be searched. *Id.* at 115–16 (citing Tex. Code Crim. Proc. art. 18.01(c)). Probable cause exists, when under the totality of the circumstances, there is a fair probability or substantial chance that evidence of a crime will be found at the specified location. *Flores v. State*, 319 S.W.3d 697, 702 (Tex. Crim. App. 2010).

The duty of a reviewing court, including a reviewing trial court, is simply to ensure that a magistrate had a substantial basis for concluding that probable cause existed. *Id.* Under the "substantial basis" standard of review, the reviewing court is not a "rubber stamp" for the magistrate's ruling, but "the magistrate's decision should carry the day in doubtful or marginal cases, even if the reviewing court might reach a different result upon de novo review." *Id.* (internal quotation marks & citation omitted).

2

A magistrate may interpret an affidavit in a non-technical, common-sense manner, drawing reasonable interferences solely from the facts and circumstances contained within its four corners. *Bonds v. State*, 403 S.W.3d 867, 873 (Tex. Crim. App. 2013). We do not invalidate a warrant by interpreting the affidavit in a technical, rather than a common-sense, manner. *See id.* Indeed, when in doubt, we defer to all reasonable inferences that the magistrate could have made. *See id.*

In this case, the affiant stated that he "ha[d] reason to believe and [did] believe" that evidence of the offenses would be found at Dreams Auto Customs, including, among other things, audio/video surveillance equipment. The affidavit describes in detail a number of facts about Dreams Auto Customs, such as the windows and front door of the business were dark tinted glass, and the back of the business had an aluminum bay door opening into the business.

The affidavit also sets forth specific facts regarding the alleged offenses. The complainants had agreed to meet a person named "Jerry" at the specifically-described custom auto shop to conduct business. When the complainants arrived, several suspects grabbed them, tied them up, beat them, poured gasoline on them, and threatened to set them on fire. After stealing cash and other items from them, the suspects then forced the complainants into the back of a van at gunpoint and drove away from the auto shop. The complainants jumped out of the van as it was moving, and the suspects shot them and continued to drive without stopping.

A witness reported that she observed the complainants lying injured on the side of a road with their hands tied and mouths duct-taped. They had suffered multiple gunshot wounds. Another witness had seen the complainants exiting a van while it was moving down the road.

One of the complainants directed the affiant to Dreams Auto Customs, which the affiant determined was owned by appellant's wife. When shown appellant's photograph, the complainant identified appellant as the suspect who punched the

3

complainants, poured gasoline on them, held a lighter near them, threatening to set them on fire, and ordered the other suspects to take them away in the van.

Based upon this information, the affiant believed that DNA from the complainants and the suspects, as well as property belonging to the men and "instrumentalities of the crime such as the white van . . . , guns . . . , [and] zip ties" used to tie the men, would be found inside the auto shop. The affiant also believed surveillance equipment "may be found" there.

Here, the affidavit established a sufficient nexus between criminal activity, the things to be seized, and the place to be searched. *See Bonds*, 403 S.W.3d at 873–74. From the face of the affidavit, it is a fair inference that surveillance equipment found in the auto shop, if any, would have recorded evidence of the criminal activity. *See Rodriguez v. State*, 232 S.W.3d 55, 62 (Tex. Crim. App. 2007).

There is fair probability that the offenses occurred in a building where the windows were blacked-out and a bay door that opened directly into the premises and where valuable property (vehicles) belonging to customers, along with other expensive custom auto equipment, presumably was housed. Even the name of the business, "Dreams Auto Customs," supports the inference that expensive custom equipment would be there. From these facts, a magistrate reasonably could have inferred that a business owner interested in obscuring the view into his windows and providing secure access to the building within which such property is housed also would have a security system in place, including surveillance equipment, and such surveillance equipment probably recorded evidence of the criminal activity occurring there. *See, e.g., Walker v. State*, 494 S.W.3d 905, 909 (Tex. App.—Houston [14th Dist.] 2016, pet. ref'd) (holding magistrate reasonably could have inferred that evidence probably would be on the defendant's cell phone when the defendant had been communicating with the complainant and planning robberies around the time the complainant was robbed and killed); *Eubanks v. State*, 326

4

S.W.3d 231, 248 (Tex. App.—Houston [1st Dist.] 2010, pet. ref'd) (holding magistrate reasonably could have inferred that defendant had pornographic photographs stored on a computer when he allegedly made the complainants pose for nude or partially nude photographs, even though the complainants did not mention the use of a digital camera or a computer).

Appellant's only issue concerns whether the affidavit was sufficient to establish probable cause that the surveillance video or equipment would be located at the place to be searched. The majority, however, relies on computer/camera and cellphone cases, which address the second element of article 18.01(c)—whether "the specifically described property or items that are to be searched for or seized constitute evidence of that offense or evidence that a particular person committed that offense." Tex. Code Crim. Proc. art. 18.01(c). The majority acknowledges that those cases do not involve the third element—whether evidence is located at the place to be searched. *Id.* Although the majority acknowledges that those cases do not concern the element that is at issue in this case, it nonetheless finds those cases persuasive in analyzing whether it was reasonable for the magistrate to infer that the surveillance system existed.

The majority recites the general proposition that to support a search warrant for a computer, this court has held that there must be some evidence that a computer was directly involved in the crime. *See Ex parte Jones*, 473 S.W.3d 850, 856–57 (Tex. App.—Houston [14th Dist.] 2015, pet. ref'd); *Ryals v. State*, 470 S.W.3d 141, 143, 146 (Tex. App.—Houston [14th Dist.] 2015, pet. ref'd); *Porath v. State*, 148 S.W.3d 402, 409 (Tex. App.—Houston [14th Dist.] 2004, no pet.). The majority is correct that this court has held that there must be some evidence that a computer was directly involved in the crime when addressing the second element.

However, the majority misses the mark in this case. Had appellant challenged whether the affidavit was sufficient to establish probable cause that the surveillance

5

equipment is evidence that appellant committed the charged offense, then those cases would be applicable. But that is not the element appellant expressly placed at issue in this appeal. Instead, the majority is attempting to replace one element with another that has no relevance to the issue presented. Stated differently, to explain how the affidavit is purportedly not sufficient to establish probable cause that the surveillance equipment is located at the place to be searched, the majority seeks to support its position by arguing that authority from this court requires that the affidavit be sufficient to specifically establish probable cause that the surveillance equipment is evidence that appellant committed the offense.

The majority recognizes that a magistrate may rely on matters of common knowledge in finding probable cause as the magistrate may interpret an affidavit in a non-technical and common-sense manner. Surveillance systems have permeated nearly every aspect of society. It is not necessary to run a Westlaw search for confirmation of the vast presence of surveillance systems. One need only enter any store, restaurant, parking garage, or any other commercial property and look over head to note visible surveillance cameras.

The magistrate could have inferred that a custom auto shop would have costly equipment and expensive vehicles belonging to the shop's customers. With valuable property located on its premises, it is a reasonable inference that the auto shop would take measures necessary to protect its business from theft or vandalism. Such measures included dark tinted glass in its front door and windows and a bay door that opened directly into the premises, and the magistrate could have inferred that the shop would take other actions to secure the property with a security system, which would include surveillance equipment to record any criminal activity occurring on the premises.

Deferring to all reasonable inferences the magistrate could have made, I would

uphold the finding of probable cause, and affirm the judgment of the trial court.


/s/     Martha Hill Jamison
Justice


En Banc Court consists of Chief Justice Frost and Justices, Boyce, Christopher, Jamison, Busby, Donovan, Brown, Wise, and Jewell.

Chief Justice Frost and Justices Boyce, Christopher, Busby, Wise, and Jewell join the En Banc Majority Opinion authored by Justice Brown. Justice Jamison and Justice Donovan issue Dissenting Opinions.
Publish — TEX. R. APP. P. 47.2(b).