

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

## No. 02-18-00459-CR

_____

MAX DELASTES HALL, Appellant

V.

THE STATE OF TEXAS

On Appeal from County Criminal Court No. 8
Tarrant County, Texas
Trial Court No. 1513680

Before Sudderth, C.J.; Kerr and Birdwell, JJ.
Memorandum Opinion by Chief Justice Sudderth

## MEMORANDUM OPINION

Appellant Max Delastes Hall brings two points on appeal. We affirm the trial court's judgment as modified to delete the unconstitutionally assessed "emergency management services" fee.

## Background

On January 28, 2017, at approximately 1:00 a.m., David Snyder called 9-1-1 to report a driver of a red Kia Soul stopped at an intersection on East Pioneer Parkway, a major thoroughfare in Arlington. Snyder reported that although the light had cycled twice, the Kia had not moved, and when he checked on the driver, he saw that the driver was slumped over the steering wheel. The slumped-over driver was later identified as Appellant.

When Sergeant J. Gowins of the Arlington Police Department arrived on the scene, the Kia was in the turn lane with a turn signal on and the car was in drive. Although fire and emergency authorities were already there, they had not yet made contact with Appellant. Sergeant Gowins testified that after additional officers arrived, he attempted to wake Appellant but that it was "very hard" to do so. Sergeant Gowins described having to hit the window "pretty hard a few times just to wake him up." And according to Sergeant Gowins, when Appellant finally woke up, he "appeared extremely confused and like [he] wanted to drive away." Sergeant Gowins also explained that, based on his more than ten years' experience as a police

officer, individuals who had passed out due to the influence of drugs or alcohol are harder to awaken than those who simply fall asleep without such influence.

Appellant eventually shifted his car to park and got out. Once emergency medical technicians examined Appellant to ensure there were no immediate medical concerns, Sergeant Gowins passed the DWI investigation to Officer Margarito Gonzales.

During Officer Gonzales's investigation, Appellant declined consent to a blood draw, so Officer Gonzales applied for a blood-draw search warrant. In his supporting affidavit, Officer Gonzales wrote:

> I am a Peace Officer of the State of Texas, to wit: a police officer of the City of Arlington, Tarrant County, Texas, and I have good reason to believe and do believe that heretofore, on the 28 day of January 2017, at 01:16 o'clock a.m., in Tarrant County, Texas, Max Hall . . . did then and there commit an offense relating to the operation of a motor vehicle while intoxicated, namely Driving While Intoxicated . . . .
>
> Specifically, I . . . was informed by David Snyder of the following:
>
> **Driving . . . (DWI . . . ) facts:**
>
> David advised he was stopped at an intersection behind the suspect vehicle and waited two full light cycles before approaching Max inside his vehicle. Upon approach, he observed the driver slumped at the steering wheel unresponsive. Sgt Gowins arrived on scene 6 minutes later and Max consistent [sic] with the complainant's call. Sgt Gowins added the vehicle was in drive with Max's foot on the brake. He also stated that it took the suspect a while to wake up after trying to wake him up. I later arrived on scene and observed Max's Red Kia Soul on the roadway in the far left turn lane at the intersection. I did confirm with Sgt Gowins that Max was found sitting in the driver's seat of the red Kia Soul slumped over.

### Observations of suspect's physical condition:

Max had slight difficulty maintaining balance on scene as he swayed side to side . . . . I did smell the odor of an alcoholic beverage on his breath on scene while investigating. On scene, Max had no sense of how long he had been stopped at the intersection prior to being detained. On scene, he stated it was 11:00 pm when it was actually 1:39 am. He also stated he had arrived at his friend's house and only stayed for an hour starting at 8:00 pm yesterday prior to officers contacting him. Officers actually woke him up at approximately 01:20 am. Max did admit to consuming half of an alcoholic beverage and smoking marijuana at his friend's earlier.

### Results of field sobriety tests given to suspect:

I administered the field sobriety tests to Max. During the horizontal gaze nystagmus test, Max scored a 4 out of six. He showed lack of smooth pursuit and distinct and sustained nystagmus at maximum deviation. During the walk and turn test, Max also failed and scored a 4 out of 8. He stepped off the line on the 2nd and 9th step during the 1st set of steps, took 17 steps instead of 9 during the 1st set, and performed an improper turn by not pivoting. He also broke position prior to starting during the instructions portion of the walk and turn. Max also scored a 2 out of 4 and failed the one leg stand. Max used his arms for balance and put his right foot down on the 2nd count. Max failed all 3 tests.

The affidavit was sworn to at 3:54 a.m. A warrant to draw Appellant's blood was issued twenty minutes later.

Before Officer Gonzales testified at trial, Appellant moved to suppress the blood-test results on the basis that the warrant was deficient. The trial court overruled Appellant's objection.

The jury found Appellant guilty of driving while intoxicated. The trial court adopted the parties' agreement as to punishment and sentenced Appellant to six months' confinement and suspended his driver's license for a period of six months.

4

## Discussion

### I. Emergency management services fee

In his first point Appellant challenges the constitutionality of a $100 "emergency management services" fee assessed in the bill of costs. *See* Tex. Code Crim. Proc. Ann. art. 102.0185. The State candidly concedes that we have previously held this fee facially unconstitutional. *See Albrecht v. State*, No. 02-16-00316-CR, 2018 WL 285081, at *1 n.2 (Tex. App.—Fort Worth Jan. 4, 2018, no pet.) (mem. op., not designated for publication) (interpreting "emergency management services" fee to refer to the same $100 "emergency medical services" fee provided for by article 102.0185(a) of the rules of criminal procedure); *Casas v. State*, 524 S.W.3d 921, 923, 925–26 (Tex. App.—Fort Worth 2017, no pet.) (holding the article 102.0185(a) "emergency medical services" fee facially unconstitutional). We therefore sustain Appellant's first point and modify the trial court's judgment to reflect assessed costs in the amount of $332.10.

### II. Motion to suppress blood-test results

In his second point, Appellant argues that the trial court erred by denying his motion to suppress the blood-test results. In particular, Appellant argues that Officer Gonzales's affidavit did not contain sufficient facts to establish probable cause that evidence of intoxication would be found in Appellant's blood at the time the search warrant was issued.

Where the State justifies a search on the basis of a warrant, we uphold the magistrate's probable-cause determination "so long as the magistrate had a 'substantial basis for . . . conclud[ing]' that a search would uncover evidence of wrongdoing." *Illinois v. Gates*, 462 U.S. 213, 236, 103 S. Ct. 2317, 2331 (1983) (quoting *Jones v. United States*, 362 U.S. 257, 271, 80 S. Ct. 725, 736 (1960), *overruled on other grounds by United States v. Salvucci*, 448 U.S. 83, 100 S. Ct. 2547 (1980)). In assessing the sufficiency of an affidavit for an arrest or a search warrant, we are limited to the affidavit's four corners. *Jones v. State*, 833 S.W.2d 118, 123 (Tex. Crim. App. 1992). We interpret the affidavit in a commonsense and realistic manner, recognizing also that the magistrate could have drawn reasonable inferences. *Davis v. State*, 202 S.W.3d 149, 154 (Tex. Crim. App. 2006).

Officer Gonzales's affidavit provided the magistrate with the following facts:

- Snyder reported that he discovered Appellant slumped over the steering wheel of his Kia after sitting through two green-light cycles of a stoplight.

- When Sergeant Gowins arrived, he observed Appellant's Kia in the far left-turn lane and that Appellant was slumped over the steering wheel, unresponsive, and with the vehicle in drive.

- It took officers "a while" to awaken Appellant.

- Once out of the vehicle, Appellant "had slight difficulty maintaining balance . . . as he swayed side to side on scene."

- Officer Gonzales smelled alcohol on Appellant's breath.

- Appellant had no sense of how long he had been stopped at the intersection and seemed confused as to time. Appellant stated that it was 11:00 p.m. when it was actually 1:39 a.m. Appellant also claimed to have gone to a friend's house at 8:00 p.m. and only stayed an hour before starting to drive home.

- Officers awoke Appellant at 1:20 a.m.

- Appellant admitted to consuming half an alcoholic beverage and smoking marijuana earlier that night.

- Appellant registered four of six intoxication clues on the HGN test.

- Appellant registered four of eight intoxiction clues on the walk-and-turn test.

- Appellant registered two of four intoxication clues on the one-leg-stand test.

- Appellant failed all three field sobriety tests.

- Appellant refused to provide a blood specimen.

- The affidavit was sworn to at 3:54 a.m.

Appellant argues that the four-hour gap between the time the officers woke Appellant and the time the warrant was issued was fatal to the search-warrant application because any intoxicating substance would have dissipated over time and, thus, he argues that there was no assurance that evidence of intoxication would be discovered once the warrant was signed. We are not persuaded by this argument. *See State v. Jordan*, 342 S.W.3d 565, 571–72 (Tex. Crim. App. 2011) (holding that a four-hour window between the earliest time officers could have observed defendant's conduct and the time warrant was issued did not undermine probable cause for issuance of blood-draw warrant); *State v. Dugas*, 296 S.W.3d 112, 117 (Tex. App.—Houston [14th Dist.] 2009, pet. ref'd) (rejecting defendant's argument that a

7

maximum six-hour gap between the time of traffic stop and issuance of warrant rendered affidavit in support of blood-test warrant stale). "Evidence of any amount of alcohol, or any other substance or combination falling within the definition of 'intoxicated' in Section 49.01(2) of the Penal Code, could be probative of intoxication because it would provide evidence that [Appellant] introduced such a substance into his body." *Jordan*, 342 S.W.3d at 571–72.

Officer Gonzales's affidavit provided the magistrate with sufficient information to determine that a blood draw would likely lead to such evidence of Appellant's intoxication. The magistrate could have reasonably inferred from the information presented in the affidavit that Appellant was intoxicated at 1:20 a.m.—when police woke him from his slumped-over slumber—and that evidence of intoxicating substances would be found in Appellant's blood four hours later. *See id.* ("Given the symptoms of intoxication described in the affidavit, we hold that the magistrate had a substantial basis to determine that evidence of intoxication would probably be found in [Jordan]'s blood within four hours of the stop."). We therefore overrule Appellant's second point.

## Conclusion

Having sustained Appellant's first point and overruled his second, we affirm the trial court's judgment as modified to reflect the assessment of $332.10 in court costs.

/s/ Bonnie Sudderth

Bonnie Sudderth
Chief Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: August 26, 2019